McQueen v. Fulgham.

---

SARAH McQUEEN AND ANOTHER V. NARCISSA J. FULGHAM.

The common law liability of a husband for the torts of his wife is not, it seems, abrogated in this State by our statutes regulating marital rights. An action, therefore, lies against both husband and wife for slanderous words uttered by the wife alone.

*Quære?* Whether, in such an action, the separate estate of the wife or the community property can be subjected to the judgment in exoneration of the husband's separate property?

The case of Linney v. Maton, (13 Texas Rep., 449,) cited and approved, in so far as it is there held that words importing want of chastity to a female are not actionable without special damage.

But it seems that any damage, however slight, will suffice to sustain the action.

Where the special damage alleged to have resulted from words defamatory of female reputation was dejection of mind, and loss of health, and consequent inability of the plaintiff to attend to her ordinary business, it was *held,* to be sufficient to sustain the action.

A court cannot hold, as matter of law upon exceptions to a petition, that slanderous words derogatory to the reputation of a female for chastity may not so prey upon her mind and impair her health as to occasion pecuniary loss for which an action will lie.

McQueen v. Fulgham.

See this case for evidence held to be insufficient to sustain a verdict for damages in an action of slander, for the reason that the special damage, (loss of appetite and pecuniary injury,) was not shown to be consequential upon the defamatory words.

APPEAL from Tyler. Tried below before the Hon. J. M. Maxcy.

This was an action of slander brought by Narcissa J. Fulgham, a minor who sued by her next friend, against Sarah McQueen and her husband, Milton McQueen, the damages being laid at ten thousand dollars.

The slanderous matter charged in the original petition was that the defendant Sarah uttered and published the words following, to-wit:—" Narcissa Jane Fulgham had a child whilst she was at Mrs. Kirkwood's pretending to weave a piece of cloth; she lay a-bed nearly all the time she was pretending to weave the cloth, and had her baby, a large baby, and Mrs. Kirkwood had her cloth woven for her;" which words were alleged to have been spoken in the presence and hearing of Mary Pullen and sundry other persons.

The defendant, Milton McQueen, demurred generally in a separate answer, because the matters and things set up in the petition were insufficient in law to entitle the plaintiff to have or maintain this action against this defendant. This demurrer was overruled by the court.

Both defendants demurred generally and also specially, assigning for cause that the plaintiff's petition contained no allegation of special damage.

The plaintiff thereupon amended her petition and alleged "that by reason of and in consequence of the speaking, utterance, and publishing of said false and slanderous words that plaintiff is greatly injured in her fame, name, credit and reputation, and brought into public infamy, scandal and disgrace; and by means of the speaking, uttering and publishing of said base, scandalous and malicious words by the defendant, the plaintiff became dejected in mind and enfeebled in body, so as to be prevented from attending to her ordinary business," to her damage, &c.

In a second count of the amended petition the plaintiff charged

that the defendant Sarah, wife of the defendant Milton McQueen, uttered and published of and concerning the plaintiff, who was a single woman, "certain other false, scandalous and malicious words, in substance as follows :—'I,' (meaning said Sarah McQueen,) 'had understood that she, Narcissa Jane Fulgham, (meaning your petitioner,) had a miscarriage,' thereby meaning that your petitioner had been delivered of a bastard child." This count also alleged the special damage in the same terms as the preceding allegation, to consist in dejection of mind and enfeeblement of body, so as to prevent the plaintiff from attending to her ordinary business, and laid as aggravation the injury to her fame, name and repute.

In a third count, the plaintiff charged the slanderous matter as specified in the second count, with the addition of the following words : "Mrs. Dominey told me, (meaning the said Sarah McQueen,) that Narcissa Jane Fulgham, (meaning your petitioner,) had had a miscarriage and it was a pretty large child." As special damage this count alleged that "in consequence of the speaking, utterance and publishing of which said false and slanderous words, your petitioner became dejected and grieved in mind, enfeebled in body, her health impaired so as to be thereby prevented from attending to her ordinary business ; and otherwise injured in her name, fame and credit, and brought into public scandal, infamy and disgrace; and for the clearing of the said scandal has been subjected to great trouble and expense in procuring the advice of counsel and the testimony of witnesses, greatly to her damage, to-wit, in another sum of ten thousand dollars." Plaintiff made a direct averment that the defendants were husband and wife, and prayed judgment against them both.

The defendants amended and alleged that the defendant Sarah owned and possessed in her own right and separate from her husband, real estate and slaves together with a large amount of personal property, the same being ample to respond in damages over and above the amount claimed by the plaintiff. They further represented that if the said Sarah ever used the words alleged in the petition, that she at the same time gave and mentioned her author, to-wit, one Mrs. Dominey ; and that the same were spoken, if at

30*

all, enquiringly as to the truth of said report, and out of her great concern for the character and standing of the plaintiff, and without any malice against the plaintiff.

All of the demurrers to plaintiff's petition were overruled, except the special demurrer to "the last count so far as relates to special damages," which was sustained.

A trial was had at the Spring Term, 1859, when the plaintiff introduced Mary Pullen, who proved in substance the uttering of the defamatory words imputed to the defendant Sarah, but said that they appeared to be made in the way of inquiry, and that the defendant gave the name of Mrs. Dominey as her author. This latter lady was introduced and testified that she had never told the defendant Sarah anything of the kind, nor had ever had any conversation with her regarding the plaintiff of the character complained of. It was shown that the plaintiff had always maintained an unimpeached character for modesty and morality, and that it was not injured by the defamatory reports on which this suit was founded.

The witness, whose testimony is alluded to in the opinion, testified that he had known the plaintiff for nearly twelve years, and had seen her as often as once a month since that period; that he saw her soon after the report of her having a bastard child or a miscarriage got into circulation, which was some time in 1858; that he did not hear her speak on the subject of the report, but observed a great change in her; that before the period in question she had been cheerful enough though quiet and modest, but after the report seemed greatly changed, being depressed and very unhappy, silent and much dejected; that she would sit at dinner and refuse to eat as formerly; that previously she had been accustomed to assist in doing the household work of her father's family, but she was become, as witness considered, unable from her state of mind to attend to her duties and perform her labor in the family as formerly. That she was about seventeen years of age and lived in her father's family. Witness had seen her several times of late, and her health seemed improved; she had become more able to attend to her ordinary duties and when witness last saw her she was at work.

McQueen v. Fulgham.

Other witnesses spoke in general terms of the distress and dejection of the plaintiff after the defamation of her character.

Verdict in favor of plaintiff for $2500, and judgment therefor against both defendants. A new trial was asked and refused, and the defendants appealed.

*E. B. Pickett* and *T. Rock*, for the appellants.

*H. N. & M. M. Potter*, and *Cleveland*, for the appellees.

MOORE, J.—It is an undeniable proposition, that at common law the husband is a necessary party in an action for slander by the wife, as well as other torts. (1 Chit., Pl. 92; 2 Kent., 149; Hanks and wife v. Harman and wife, 5 Binn., 43.) And it has been held that he may be sued alone in such case. (Hasbrouck v. Weaver, 10 John., 247.) It is insisted, however, that the common law doctrine upon this subject, is abrogated in this State by our statutes regulating marital rights. With us the separate identity of the wife, with respect to her property, is not merged in the husband. Her property is not vested in him by marriage. But the common law rule holding the husband responsible for the wife's torts, does not rest entirely upon the ground that he takes by marriage all of her personal property, and that she is presumed to have no separate estate. It rests perhaps mainly upon the supposition that her acts are the result of the superior will and influence of the husband. Owing to the intimate relation between husband and wife, and to the nature of the control given him by law and social usage, over her conduct and actions, it would be difficult, if not impossible, for the courts to determine when she had acted at her own instance, and when she was guided by his dictation. While our statutes are framed with the view of securing to the wife her separate property, and of sedulously protecting her with reference to it, against the recognized and controlling influence of the husband over her conduct, it would be a stretch of judicial authority to hold, that the common law responsibility attaching to him for the acts of the wife, is by mere implication abolished. We see therefore, no objection to the prayer of the

petition for a general judgment, and think the general demurrer was properly overruled. Whether the judgment in such cases should not be so framed as to require, in the first instance, satisfaction from her separate estate, or the community property, before resorting to the separate property of the husband, as no exception has been taken to the form of the judgment, need not at present be discussed.

It is insisted by appellees, that this court should declare that words charging a female with lewdness, are actionable by the common law of this State. That this should be the law, we entertain no question. It is a matter of regret and surprise, that this blot upon the common law should have been suffered by legislative authority, to remain so long a stigma upon our jurisprudence. In no other case can it be more fairly presumed that the scandal, if believed, will produce detriment, than when a female is charged with incontinence; and therefore, in no other should the plaintiff be better entitled, in reason and good sense, to the benefit of that presumption. Yet while the criminal code has reduced deliberate homicide in revenge for insulting words towards a female relation of the party guilty of the homicide, from murder to manslaughter, for this species of slander, than which none can be more cruel and malicious in its origin, or more pernicious in its consequences, unless some specific damages can be proved, the party whose peace of mind is destroyed, and whose prospects in life are ruined, can by any appeal to the courts of the country obtain neither even a partial compensation for the injury, nor, what is of infinitely more importance, an opportunity of fairly meeting and rebutting the calumny. This doctrine is upheld by the courts in England upon the ground that the spiritual courts alone have jurisdiction in such cases. As unsatisfactory as this reason has been acknowledged to be there, it is wholly inapplicable in the American courts. But we have seen no case in which it has been held that words charging a female, either married or single, with a want of chastity, are of themselves actionable by the common law. Cases have been cited where it is made so by statute, and in some others, as for instance in Connecticut, New Hampshire, and Massachusetts, in which it is said that such words

McQueen v. Fulgham.

are by the common law of those States actionable; but it is placed upon the ground that by statute in those States, fornication, lewdness, &c., are indictable offences, and that the words consequently impute a crime. (Frisbie v. Fowler, 2 Conn., 707; Miller v. Parish, 8 Pick., 384; McGee v. Wilson, Little's Sel. Cases, 187; Williams v. Greenwood, 3 Dana, 432; Shield v. Cunningham, 1 Blackf., 86.) It is the duty of the courts to administer the law, not to make or remodel, it. However strong, therefore, may be our convictions of the impolicy of it as we find it, the authorities upon which it has been settled, are too many and too great to run counter to them. The conclusion that we have attained, is the same to which this court was forced, when the question was previously before it in the case of Linney v. Maton, 13 Tex., 449. And but for the interest of the question, we should have deemed it only necessary to have cited this decision.

Nevertheless, while the authorities will not uphold a suit for such words as are set out in the petition, unless special damage has resulted to the plaintiff, any damage however slight has been said to be sufficient to sustain the action. For example, in Miller v. Olmsted, 1 Wend., 506, the refusal of civil treatment at a public inn was held evidence of special damage. And that the plaintiff was turned away from the house of her uncle, and charged not to return there until she had cleared up her character, was also held sufficient to sustain the action. (Williams v. Hill, 19 Wend., 305.) So in Bradt v. Towsley, (13 Wend., 253,) allegations almost identical in language with that used in the petition in this case, charging in consequence of the slander, the loss of health and consequent incapacity to attend to business, was held on demurrer, a sufficient averment of special damage. It is true that it is also said, the damage in consequence of the slanderous words must be in the nature of a pecuniary loss, and otherwise the action can not be sustained; and, also, that the injury must be the natural and immediate consequence of them. But the court can not say, as a question of law, that the words of a ribald and malign slanderer may not prey like a canker upon the mind and health of a sensitive and nervous female, until the one is unsettled and the other impaired and destroyed, much less that pecuniary injury would

not result from the loss of health, and the inability to discharge her ordinary and accustomed domestic labor. We are therefore of the opinion, that the court did not err in overruling the special exceptions of the defendants to the plaintiff's petition.

The motion for a new trial, however, presents for our consideration the question, whether the testimony before the jury establishes with sufficient certainty to sustain the verdict, the fact that the plaintiff did in reality, sustain any pecuniary loss or damage, as a direct and natural effect of the imputed slanderous words spoken of her by the defendant. Although on questions of fact, the verdict of the jury will not be disturbed in this court, if it can fairly and reasonably be sustained by the evidence, and in cases of this character, the court would feel especially disinclined to interfere with it, unless the testimony is clearly insufficient to support it, we are forced to the conclusion, after a careful examination of the statement of facts in this case, that the evidence before the jury does not authorize the verdict. The plaintiff's ill health and consequent inability to do the household duties which she had been accustomed to perform, was testified to by but one witness, who seems to have had only occasional opportunities of drawing his conclusions, and even by his evidence her impaired health and inability to labor was temporary. The only attempt to show a connection between the alleged slander and the plaintiff's ill health, is by the opinion of this witness based, it seems, simply upon the fact of their being cotemporaneous. The fact to be proved, it is true, is one which can ordinarily be established only by circumstantial evidence ; but, we think, when it may be so readily traced to some other cause, the mere opinion of this witness, unless supported by some other facts than he has stated, or by better opportunities for its basis than he has shown himself to possess, is not sufficient to establish the fact which it was incumbent upon the plaintiff to prove. It seems, also, that the nature and duration of her illness, as well as its effect upon her ability for the discharge of her accustomed duties in the family, might have been much more satisfactorily and clearly shown by the members of the family, her physician and friends, some of whom must have been in the daily, and the others in the frequent and habitual intercourse with,

her.  Nor was there any effort to show that she was accustomed to derive any pecuniary benefit from the labor in the family which she usually performed, or that it was of such a character as to justify the inference that the inability to perform it must have been attended with pecuniary loss.  We forbear, however, a further comment upon the testimony, as it will no doubt, in connection with such other evidence as may be accessible to the parties, be again presented for the consideration of the jury.

For the error of the court in overruling the motion for a new trial, the judgment is reversed, and the cause remanded.

Reversed and remanded.