## Pittsburgh, Allegheny and Manchester Passenger Railway Co. *versus* McCurdy.

1. A street railway company discharged one of its conductors, subsequently complaints were made that other conductors allowed him to continue to ride on the cars of the company on employees' tickets, whereupon the following notice was posted in a room temporarily used as a waiting room:

II. B. McCurdy has been discharged for failing to ring up all fares collected. Discharged employees are not allowed to ride upon employees' tickets.                                    C. P. SORG, Ass't Sup't.

In an action for libel *Held*, (*a*) that it was not competent to aid the innuendo of embezzlement by the mere opinions of witnesses. (*b*) That it was a question for the court, in the absence of any evidence, that the alleged libellous words were used in any other sense than that which in the business was ordinarily attributed to them, to determine whether the words in that sense covered the crime of embezzlement as charged in the innuendo.

October 30th, 1886. Before GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. MERCUR, C. J., and PAXSON, J., absent.

ERROR to the Court of Common Pleas No. 1, of *Allegheny county :* Of October Term, 1886, No. 109.

This was an action on the case brought by H. B. McCurdy against the Pittsburgh, Allegheny & Manchester Passenger Railway Company, and Charles P. Sorg, to recover damages alleged to have been sustained by him, by reason of a libellous notice posted by the defendants, of and concerning him.

The defendants pleaded " not guilty."

The facts of the case, as they appeared on the trial before COLLIER, J., are sufficiently stated in the opinion of the Supreme Court.

On the trial the plaintiff called numerous witnesses to testify as to what they understood the alleged libellous notice to mean, under objection they were permitted to testify as to this. They testified that they understood that the plaintiff was discharged for stealing. (Seventh, eighth, ninth, tenth and eleventh assignments of error.)

The court charged the jury *inter alia* as follows:

[P., A. & M. Pass. R'y Co. *v.* McCurdy.]

Now the first question that you have to determine is, what is the true meaning of the words in that paper, "not ringing up all fares collected?" . . . . . If the meaning of the words if not as claimed by the plaintiff, that is, that he, the plaintiff, had embezzled the money, or property of the company representing money, did not ring up all the fares collected, and thus defrauded the company, the plaintiff's case utterly fails. But if you think from all the evidence that the words do bear that interpretation, and that that is what is meant, and that that is the charge, then the next question would be where the alleged libel was posted and under what circumstances.

Verdict for the plaintiff in the sum of $400, as against the Pittsburgh, Allegheny and Manchester Passenger Railway Company, and for the defendant, Charles P. Sorg, and judgment thereon, whereupon the Railway Company took this writ, assigning for error *inter alia* the admission of evidence and that portion of the general charge as shown above.

*William R Blair*, for plaintiff in error.—It has been expressly decided by this court that it is not competent to prove by witnesses the special averments of the innuendo in the declaration: Rangler *v.* Hummel, 1 Wright, 130.

The notice proved in this case was no libel; first, because it contains no imputation whatever injurious to the plaintiff's character; and secondly, because, even supposing the notice might be distorted so as to acquire the meaning so unjustifiably imputed to it by the plaintiff, yet the evidence indisputably shows that this communication was made "upon a proper occasion from a proper motive," and was based not only "upon a reasonable or probable cause" but upon actual fact.

Whether a communication be prvileged or not is a question for the court and not for the jury. The court erred, therefore, in submitting the question in this case to the jury: Briggs *v.* Garrett, 1 Amerman, 414; Marks *v.* Baker, 12 Rep., 530.

*W. D. Moore* and *F. C. McGirr*, for defendant in error.— Whenever the alleged libellous words are not ordinary English, but local, technical, provincial, or obsolete expressions, or slang or cant terms, evidence is admissible to explain their meaning, provided such meaning has been properly alleged in the statement of claim. But when the words are well known and perfectly intelligible English, the court will give them their ordinary English meaning, unless it is in some way shown that that meaning is inapplicable. This may appear from the words themselves, for in some cases to give them their ordinary English meaning would make nonsense of them. But, if in their ordinary English meaning the words would be intelligible,

facts must be given in evidence to show that they may have been used in a particular sense on this particular occasion. After that has been done, a by-stander may be asked, "What did you understand by the expression used?" Odgers on Libel and Slander, *110, 538; Townshend on Slander and Libel, 651. See also Abbott's Trial Evidence, 664; Wharton on Evidence, Sec. 975, and authorities cited. Woods' Ed. of Folkhard's Starkie on Slander and Libel, *445, Sec. 562 and 563.

In support of plaintiff's points in court below, we cite, Where there is excess of privilege, malice is an inference of law: Pittock v. O'Neil, 13 P. F. S., 253.

To overcome the defence of privileged communication, want of probable cause may be left to jury as evidence of malice: Gray v. Pentland, 4 S. & R., 420.

So malice to take away privilege need not be proved by extrinsic evidence. It may be inferred from the relation of the parties, the circumstances attending the publication, and even the terms of the publication: Gassett v. Gilbert, 6 Gray, (Mass.,) 98; Hatch v. Lane, 105 Mass., 394; Odgers on Libel, &c., *270.

Privilege may be lost if extent of publication be excessive: Odgers on Libel, &c., *225; Phila., Wil. & Bal. R. R. Co. v. Quigley, 21 Howard, U. S., 202; Tench v. Gt. Western Ry. Co., 33 U. C. R., 8.

Mr. Justice CLARK delivered the opinion of the court, February 7th, 1887.

The plaintiff in this case, H. B. McCurdy, was in January 1885, employed as a conductor on the cars of the Pittsburgh, Allegheny and Manchester Passenger Railway Company; and, on the 13th May, 1885, was discharged from that employment. Subsequently, complaints were made that he still claimed the right to ride on the company's cars, on tickets to which employés only were entitled; whereupon, the company posted, in the room temporarily used as a waiting room, a notice containing the alleged libellous matter complained of, in the following form:—"H. B. McCurdy has been discharged for failing to ring up all fares collected. Discharged employés are not allowed to ride on employés' tickets. C. P. Sorg, Ass't. Supt."

The declaration is not printed, but according to the statement in the paper books, it contains two counts; the first set forth that the plaintiff was and is a person of good reputation, and was employed by the defendant company as a conductor; that Charles P. Sorg was the assistant superintendent of said company, having authority to hire and discharge employés, and give reason therefor, and was the general agent of

the company; that the defendant company used a certain device to register the fares collected by the conductors, to prevent the conductors from appropriating the same to their own use, etc.; that it was the conductor's duty "to ring up" all fares collected; that the plaintiff had faithfully performed this duty during his employment, etc., and paid over to said company all fares collected; that he was discharged from the company's service on 13th March, 1885; and yet the defendants, well knowing the premises, etc., and controversy, etc., published a certain false, scandalous, etc., notice as follows, etc., meaning, etc., that the plaintiff was guilty of the crime of embezzlement. The second count contained a somewhat fuller statement of the alleged libellous matter, but substantially the same averments. The innuendo in both counts is that the plaintiff was guilty of embezzlement, but the innuendo, it is plain, can neither enlarge nor change the meaning of the words in their ordinary signification, or as it is expressed and applied in the previous averments of the declaration, and in the colloquium.

The expression, "failing to ring up the fares collected," is, in a manner, technical; it is one peculiar to the business in which the parties were engaged; the words taken together in their ordinary signification convey no distinct meaning, they are indeed, without explanation, nonsensical and absurd; evidence was admissible therefore to explain their meaning; to show that "to ring up the fares" was by pulling a rope at the side of the car, upon receipt of each fare, to move the index one point on the circular scale of the register, and as the registry of the fare was announced by the stroke of a bell, the operation was known in the business as "ringing up the fare." The words having by such proof become intelligible, they are to be taken in the sense in which they are thus generally understood and applied, unless facts be given in evidence to show that they may have been used in some different particular sense, on the occasion referred to. There is, however, no averment in the pleadings, that the words were used in any other sense than that to which in the business they were ordinarily entitled, nor was there any evidence of any fact to sustain such an averment if it had been made.

Now the company had a clear right to insist upon the full performance of this duty; it was for many reasons, perhaps, important that it should be faithfully and promptly performed, and the company, apart from any anticipated fraud, might well annex the penalty of a dismissal from service, for neglect of this duty. But a failure to perform the duty required, might result from mere neglect or inefficiency, or from motives of dishonesty; "failing to ring up all the fares collected,"

therefore, does not necessarily imply the fraud or dishonesty of the conductor; it does not import the commission of any crime. Embezzlement is the *fraudulent* appropriation by one of the money intrusted to his care by another, and even if McCurdy did fail to ring up all the fares collected, *non constat* that he embezzled the money. "Words which do not necessarily import criminality are in pleading rendered actionable only by reference to extrinsic facts, which show them to have been used in an obnoxious sense; thus the word "forsworn" becomes actionable only when shown to have been applied to one who has given testimony under the sanction of a judicial oath; but when the charge is conveyed by the use of a generic term which unequivocally denotes the presence of every fact necessary to constitute the offence, as where one is charged with "perjury," a reference to extrinsic matters in order to fix the meaning is unnecessary: Deford *v.* Miller, 3 P. & W., 103. So, in Lukehart *v.* Byerly, 3 P. F. S., 418, the defendant was charged in several of the counts in the declaration with having spoken certain defamatory words of and concerning the plaintiff, to wit, that "Byerly had taken apples or had stolen apples out of Borland's orchard," and this court said that where the words are laid in an equivocal sense, as imputing a trespass or a felony, though proved as laid the verdict can not be considered as determining the sense in which they were understood, and that the words were not helped by the innuendo of larceny.

Words, it is true, are not to be construed in *mitiori sensu;* it is sufficient if, in their plain or popular meaning, they are libellous, but when they do not in themselves convey the meaning imputed to them in the innuendo, or where they are ambiguous or equivocal, there must be, not only in the pleadings, but also in the proofs, reference to some extrinsic matter, which will show the sense in which it is claimed they were understood: Stitzell *v.* Reynolds, 9 P. F. S., 490.

The plaintiff's default in not ringing up the fares, as we have said, might have resulted from his negligence or inefficiency, or from mere mistake or accident, or from his intentional frauds, and if people will draw from the general statement of his discharge on that ground, a merely possible inference of fraud and embezzlement, which the words themselves in their usual signification did not justify, it is certainly not the defendant's fault.

It is true, the question, as to the sense in which words are used, is generally for the jury, but that question like all others which fall within the cognizance of a jury, is one of fact and must be determined upon proper proof; if words are reasonably capable of two meanings, one of which is actionable

and the other innocent, it is for the jury to say in which sense the words were uttered or understood; but the words here employed are not equivocal or ambiguous; apart from the unjustifiable inference which the witnesses have drawn they are not even alleged to be · capable of any but one meaning, and there is absolutely no evidence, as against the railway company, that the words were used in any other sense than that which in the business was ordinarily attached to them; the question was, therefore, for the court to determine whether the words in that sense covered the crime of embezzlement, as charged in the indictment. The alleged remark of Sorg that he " had got rid of one of the damnedest thieves on the road," especially as the verdict was in favor of Sorg, certainly cannot be imputed to the company.

Several witnesses were called, who stated what impression they took from the language used in the written notice, but this at the best was only the expression of an opinion, not the statement of a fact, and upon examination of the evidence it will be seen there was no ground for the opinion. There was not even the suggestion of any fact, by the witnesses, that the words were susceptible of any other than the single sense of their ordinary use in the business; they testified to a mere inference, which they drew from the paper, and which it is plain the paper did not warrant. Such testimony was wholly irrelevant and incompetent for the purpose intended. It is not competent in an action of libel, to aid the innuendo by the mere opinion of a witness. " If this could be done," says Mr. Justice THOMPSON in Rangler v. Hummell, 1 Wright, 130, · " there would be no use for an innuendo; its office would be supplied. by the oath of the witness, who would draw the inference from the precedent facts, instead of a jury; this is not permissible."

　　　　　　　　　　　　　　　　　　　　Judgment reversed.

STERRETT, J., dissented.