W. H. HIRSHFIELD V. FORT WORTH NATIONAL BANK AND
JOHN E. ARNOLD.

No. 3205.

1. **Non-negotiable Note Falling Due on Sunday.**—In case of a non-negotiable note or a negotiable one without "days of grace" falling due according to its face upon Sunday, payment can not be required nor protest made on the preceding Saturday. The following Monday is the proper date for presentment and protest unless that is also a legal holiday.

2. **Same—Statutes Construed.**—Revised Statutes, articles 2835, 2836, and 2837, do not change the common law as to notes falling due on Sunday except when any one of the days named in article 2835 shall fall upon Sunday, in which case bills may be presented, etc., on the Saturday preceding.

3. **Same.**—A promissory note waiving grace and protest falling due on Sunday, it was premature to protest it on the Saturday preceding. Such protest is a wrongful act.

4. **Protest Before Due.**—A protest before due in absence of allegation of special damages would give an action only for nominal damages.

5. **Protest Wrongfully Made.**—The language of a protest as ordinarily used by the notary in making it and in giving notice is but a recital of facts. In case of a pro-

test prematurely made the reader supposed to know the law would be informed that it had been made before the paper copied therein was due, and hence would know that the maker had good reason for not paying. This would not be libellous per se.

6. **Libel — Actual Damages.** — Where the libel is not actionable per se mental anguish can not be allowed as a part of the damages without proof of some other injury or damage.

7. **Libel—Allegations Required.**—In a suit for libel, the words not being actionable of themselves, the plaintiff in addition to an innuendo showing the injurious meaning of the language should allege some special injury or damage to himself arising as the natural and immediate consequence of its publication.

8. **Extortion—Notarial Fees—Voluntary Payment.**—The regular fees having been paid to the notary making a premature protest in ignorance of the law, such act was not extortion as defined in article 2421, Revised Statutes, nor are they recoverable, having been voluntarily paid.

APPEAL from Tarrant. Tried below before Hon. R. E. BECKHAM.

In the court below, the appellant, as plaintiff, filed suit against defendants, alleging in his petition that the Fort Worth National Bank was a banking corporation, duly incorporated under the laws of the United States, and that defendant Arnold was a notary public for Tarrant County, and a clerk and employe of defendant bank; that on the 17th day of September, 1890, plaintiff Hirshfield made, executed, and delivered to one J. W. Zook his certain promissory note in writing for the sum of $225, which is set out in said petition as follows:

"$225.00.                "FORT WORTH, TEXAS, September 17, 1890.

"Sixty days after date, waiving grace and protest, I or either of us, jointly and severally, promise to pay to the order of J. W. Zook $225, value received, with 10 per cent interest per annum from date until paid, and 10 per cent additional for attorney fee if collected by law.

"Negotiable and payable at the City National Bank, Fort Worth, Texas.                                    "W. H. HIRSHFIELD."

That thereafter, to-wit, on the —— day of September, and before the maturity thereof, said Zook sold, transferred, indorsed, and delivered said note of plaintiff to the defendant bank.

That thereafter, to-wit, on the 15th day of November, 1890, and before the maturity of said note, said defendants conspiring and acting together, willfully and maliciously, and with gross negligence, illegally protested and caused to be protested plaintiff's said note, and made, issued, and uttered, published and circulated, and caused to be made, issued, and uttered, published and circulated, a certain written and printed protest thereof [and here is set forth the written extension of the protest in usual form]; further alleging in said petition, that thereafter, to-wit, on the maturity of said note, said defendants, still conspiring together, willfully, maliciously, fraudulently, and with gross negligence demanded, collected, and caused plaintiff to pay them, in

addition to the amount of the principal and interest of said note, the further sum of $3.50, which they then and there claimed and demanded as protest fees, on account of said illegal protest; and plaintiff being then and there ignorant of and unadvised as to their right to collect said money, paid them the same upon their said fraudulent and illegal demand, which sum they converted to their own use and benefit.

That plaintiff was, before the acts of the defendants as aforesaid, "of good reputation and credit both as a citizen and a business man," but the character of his business is not stated—whether a merchant or trader or not.

That by reason of which said illegal, fraudulent, malicious, and grossly negligent acts of defendants, plaintiff has suffered and been damaged in body, mind, reputation, and credit in the sum of $15,000 besides and in addition to the damage which he has sustained by reason of being caused to pay said pretended protest fees as aforesaid. He further claims the sum of $10,000 by way of exemplary damages which he says he ought to recover by reason of the premises.

To the petition defendant presented a general demurrer, which was sustained by the court. The plaintiff excepted to this ruling of the court and declined to amend, whereupon the court dismissed the case. Plaintiff excepted thereto, and has appealed.

Explanatory of above statement: "November 16 was the sixtieth day after the date of the note, excluding the day of the date, September 17, 1890, but November 16 was Sunday, as shown by the calendar. Hence the protest on November 15, the Saturday preceding."

Plaintiff assigns as error the action of the court upon the demurrer.

[This statement accompanied the opinion.]

*Ball, Templeton & Ball,* for appellant.—1. The petition set forth facts showing an actionable tort on the part of defendants to the plaintiff's injury, for which damages, both actual and exemplary, would lie. The petition alleges that the defendants, conspiring together, willfully, maliciously, and with gross negligence, protested and caused to be protested a note of plaintiff before its maturity. It further states a case of false protest and extortion by a public officer. Penal Code, arts. 240, 480; Gen. Laws, 1883, p. 5; Tel. Co. v. Brown, 58 Texas, 170; Rolin v. Steward, 14 C. B., 595 (Sedg. Lead. Cases on Meas. of Dam., p. 460); Marzetti v. Williams, 1 B. & Ad., 415; 1 Suth. on Dam., p. 129; Newell on Def., Slander, and Libel, secs. 33–37, and authorities cited; Cool. on Torts, pp. 64, 65, note 1.

2. Protest having been waived on the face of the note, it was unlawful for defendants to cause the same to be protested, whether the note was due or not. 2 Dan. on Neg. Inst., 2 ed., sec. 1092; 1 Dan. on Neg. Inst., sec. 633.

3.    The note being without grace (grace being waived), and falling due on Sunday, became payable on Monday; and the protest being made on Saturday, was premature and unauthorized.    1 Dan. on Neg. Inst., 2 ed., sec. 627; Tied. on Com. Paper, sec. 316; 3 Rand. on Com. Paper, sec. 1033; 1 Pars. on Notes and Bills, 401; Avery v. Stewart, 2 Conn., 69; Barrett v. Allen, 10 Ohio, 426; Salter v. Burt, 20 Wend., 205; Sands v. Lyon, 18 Conn., 18; Staples v. Bank, 1 Metc., 43; Kuntz v. Tampel, 48 Mo., 75; Colms v. Bank, 4 Baxter, 422.

*Jennings & Lewright,* for appellees.— 1.    The petition of plaintiff sets forth no cause of action against the defendants, and the court committed no error in sustaining defendant's general demurrer and dismissing plaintiff's case.    Bellinger v. Glenn, 80 Ala., 190; Wittich v. Bank, 20 Fla., 483.

Note falling due on Sunday, grace being waived, demand should be made on Saturday.    Rev. Stats., arts. 2835–2837; Sayles' Texas Forms, sec. 230, bottom par.; Sanders v. Ochiltree, 30 Am. Dec., 551; Kilgour v. Miles, 6 Gill & J. (Md.), 268; Doremus v. Burton, 6 Biss., 57; Barker v. Barker, 6 Pick. (Mass.), 81; Byles on Bills, sec. 210; Williams v. Bank, 67 Texas, 609.

Protest must be specially waived by indorser.    Redf. & Bige. Lead. Cases on Bills of Ex. and Prom. Notes, p. 309.

2.    Where money is voluntarily paid no action will lie for its recovery.    City of Houston v. Feeser, 76 Texas, 365; Mowatt v. Wright, 1 Wend., 355; Toure v. Burnett, 34 Ala., 400; Rheel v. Hicks, 25 N. Y., 291; Bucknall v. Story, 46 Cal., 589; Hemphill v. Moody, 64 Ala., 468; Taylor v. Hall, 71 Texas, 213.

3.    The petition failing to show any actual damages or right to recover the same, appellant could not recover any exemplary damages. Trawick v. Martin Brown Co., 79 Texas, 460.

MARR, JUDGE, *Section A.*—If the facts alleged in the petition constitute a cause of action in any view of the case under the law, then it was not subject to the general demurrer.

Was the protest prematurely made, and consequently unauthorized and wrongful? We think so, unless the recognized rule under the law-merchant has been changed by our own statutory enactments.    There is a conflict of authority, but, as we think, the weight of the authorities and the reasoning support the proposition that in case of a non-negotiable note, or a negotiable one without "days of grace" (like that in hand), falling due, according to its face, upon Sunday, payment can not be required nor protest made on the preceding Saturday.    The following Monday is the proper date for presentment and protest, unless that is also a legal holiday.    The rule is otherwise where days of grace can be claimed.    Sunday being dies non and not a legal day for exact-

ing payment, all banking business being suspended by law, can not be computed, except when it is an intermediate day. To do so would make another contract for the parties, and by requiring the defendant to pay on Saturday compel him to meet the obligation before the time for its performance had arrived. Days of grace, however, were originally granted as mere indulgence, and hence the difference in the rules and usages upon this point. Avery v. Stewart, 2 Conn., 69; Same Case, 7 Am. Dec., 250, note; 1 Dan. Neg. Inst., sec. 627; Tied. Com. Paper, sec. 316; Salter v. Burt, 20 Wend., 205; Same Case, 32 Am. Dec., 530, note; Barrett v. Allen, 10 Ohio, 426; Kilgore v. Bulkley, 14 Conn., 363; Kuntz v. Tampel, 48 Mo., 75.

We are also of the opinion that our statutes have not made any change in the rule upon this subject as above announced. They do not apply to the question in hand nor prescribe what shall be the practice when the note matures on a Sunday which is not also a legal holiday. The provisions of the statute, as will be seen upon a close scrutiny, only declare that certain legal holidays shall be treated as the Christian Sabbath in regard to the presentment and protest of bills and notes, etc., and that in the event of the occurrence of Sunday and a legal holiday upon the date of the maturity of the paper, then it may be presented or protested upon "the preceding Saturday." Rev. Stats., arts. 2835, 2837. The law as applicable to notes maturing on Sunday alone remains as it was before this enactment. If the Legislature had intended to recognize the law as already allowing the protest or presentment upon "the preceding Saturday," then the enactment of article 2835 would have been adequate for that purpose, if such had been the established rule. Article 2837 was therefore enacted to provide for a different state of case.

We conclude that plaintiff's note of hand was prematurely and wrongfully protested, but it still remains to decide whether he has otherwise shown a good cause of action. If he can recover at all (aside from the question of extortion) upon the case as made by the petition, then it must be upon the ground that the acts of the defendant in making and extending the protest of the plaintiff's note of hand, or in uttering and publishing by such means the fact that it had been dishonored, amount to a libel upon his business reputation or commercial credit. He has alleged no special damages, and unless, therefore, the words are actionable per se the demurrer was correctly sustained upon this branch of the case. Odgers on Libel and Slander, secs. 308–310, 313–315; Bradstreet v. Gill, 72 Texas, 115. The mere act of protesting the note, regarded as a wrongful act, could not give a right of action for more than nominal damages. The substantial damages result, if at all, from the publication of the act, or fact of protest; hence the wrong partakes of the character of a libel or slander, and should accordingly be governed by the same principles of law. The decision in

Rolin v. Stewart, 14 C. B., 594, was based on a breach of contract, though general damages seem to have been allowed after the dishonor of the draft was published.   See 3 Laws. Rights and Rem., etc., sec.1236. We waive the omission of the plaintiff to allege that he was a merchant or trader and the absence of any innuendo in this particular (as there was no special exception), though such an allegation is of vast importance.   Odgers on Libel and Slander, sec. 63; Cool. on Torts, sec. 202.

We concede, also, that to charge a merchant or trader falsely with being a bankrupt or insolvent, or with dishonesty in his business, whether the accusation or imputation is made in writing or by words of mouth, would present a case where the language should be held to be actionable per se and give a right of action with or without special damages.   Authorities supra; Newall v. How, 31 Minn., 235; 13 Am. and Eng. Encyc. of Law, pp. 306, 314, and notes.   But we are of opinion that the language contained in the writing, or official extension of the act of protesting the note, which is set out in the petition and made the basis of the suit, does not impute, directly or indirectly, insolvency or dishonesty to the plaintiff, or a want of ability or disposition to pay any just debt.   It is this writing that the plaintiff alleges the defendants made, uttered, and published concerning himself, and which caused damage to his credit.   The writing does not by any means necessarily or naturally have that effect so that the law would presume damages from its publication.   The instrument merely recites, that upon the 15th day of November, 1890, the notary (who is defendant Arnold) at the request of the other defendant, who was the holder of the note, presented the same during the hours of business to the teller of the bank where the note was payable, and "demanded payment thereof, which was refused."   That thereupon the notary "at the request" of the holder, "protested solemnly" against the maker and indorser, etc., as is usually done in such cases.   Of all of which, according to the instrument, he gave notice as follows:   "To W. H. Hirshfield (maker), by mail; to J. W. Zook (indorser), by mail."   This seems to have been the extent of the publication.   1 Dan. Neg. Inst., secs. 939, 940, 950.

The legal effect and the purpose of the protest, as well as the formal notarial attestation thereof, are simply to fix the liability of the drawer or indorser on the bill or note to which he is a party, and to prevent a loss to the owner by reason of the nonacceptance or nonpayment, as the case may be, by the maker or drawee.   The notary is called upon to witness and attest the essential facts which establish the liability, viz., due presentment and refusal of payment, etc.   1 Dan. Neg. Inst., sec. 929.   We very much doubt that the writing in question is actionable at all.   All of its statements are true, and it does not appear to be defamatory.   A copy of the note is annexed to and made a part of it, as set forth in the petition.   There is no innuendo, if admissible here,

that the intent and purport was to charge the defendant with refusing to pay a just debt which had then matured. This conclusion would not naturally be drawn by any one who might read the instrument in connection with the note, and it certainly contains no words to that effect. The reader, presumed to know the law, would see that the protest had been made before the note was due, and hence that the plaintiff had a most excellent reason for not paying it at that time. Let us illustrate. Suppose the defendants had published in a newspaper the statement that the plaintiff had, after demand duly made upon him, refused to pay on the 1st day of June a note upon which he was duly bound, but which by its terms did not become due or payable until the 20th day of July. That would not be libellous, although the defendants may have been actuated by malice. "Acts which neither the moral code nor the law of the land requires, it can not be libellous to charge him with not performing." Cool. on Torts, sec. 207; Odgers on Libel and Slander, sec. 308. The damages are not the natural or legal consequences of the language. But we will take the most liberal view in favor of the plaintiff of which the language used will admit, and concede that the ordinary effect or import of such language in connection with the fact of protest would be to impute to the plaintiff a failure and refusal to pay his note of hand after it had fully *matured*. This is certainly as far as the conclusion can be extended, for the language used by the defendants, and by which alone they must be judged, does not affirm the justness or validity of the obligation. The accusation must also be confined to a single note, because they have not said that he refused to meet any other obligation or was in the habit of refusing to pay his notes. Under such circumstances, we think that it is obvious that the writing is not actionable per se. The refusal to pay this particular note may have been justified by sufficient reasons. It may have been an illegal or unjust obligation, or may have already been paid by the plaintiff; hence was allowed to go to protest without any fault upon the part of the plaintiff. We mean by this that the act imputed to the plaintiff was susceptible of the above explanations, and therefore neither the acts nor the language of the defendants necessarily or in their ordinary tendency or meaning charged the plaintiff with insolvency, loss of credit, or with dishonest conduct in business. In such case the law does not presume an injury to the plaintiff and allow the recovery of general damages as when the words are actionable in themselves; for the plaintiff's credit or reputation as a tradesman may or may *not* have suffered any injury, according to the circumstances, by the publication of such alleged defamatory matter as would not necessarily or ordinarily injure or tend to injure him in these particulars. If it did so injure him in this instance, then the fact should have been alleged, showing the special injury. We are clear, therefore, in the conviction that the writing declared on as a libel is not actionable per

se, and consequently that the allegations of the petition do not show any right to recover damages for its publication. Zier v. Hofflin, 33 Minn., 66; Pratt v. Press Co., 30 Minn., 41; Newbold v. Bradstreet, 57 Ind., 38; Cool. on Torts, secs. 203, 205. Where the libel is not actionable per se mental anguish can not be allowed as a part of the damages (if recoverable in any case) without proof of some other injury or damage. Odgers on Libel and Slander, p. 310, and note; Cool. on Torts, sec. 204, and note 3; Trawick v. Martin Brown Co., 79 Texas, 460; Railway v. Levy, 59 Texas, 563.

It should perhaps also be added, that in Odgers on Libel and Slander (cited above) it is stated, on page 297, that it is not necessary to prove special damages "in any action of libel," from which it might be inferred that such damages need not be alleged in any case of libel. We can not subscribe to this doctrine. That would abolish the well recognized distinction, even in cases of libel, between words actionable in themselves and those that are not, and make all libels actionable per se. We concede that there may be words used in a published writing or public print, etc., which might be actionable per se as libels, when if only spoken they would not be; but still we think that unless the libel is of that class the plaintiff must, as he would be bound to do in cases of slander under such circumstances, allege, in addition to an innuendo showing the injurious meaning of the language, some special injury or damage to himself arising as the natural and immediate consequences of its publication. Cool. on Torts, secs. 204–206; 13 Am. and Eng. Encyc. of Law, 435, note 3; 3 Laws. Rights, Rem. and Prac., p. 2176; 72 Am. Dec., 428, note 2; Achon v. Piper, 66 Iowa, 694; Zier v. Hofflin, 33 Minn., 66; Bell v. Print Co., 3 Abb. N. C. (N. Y.), 157; Wallace v. Bennett, 1 Id., 478; Walker v. Tribune Co., 29 Fed. Rep., 827.

We now reach the determination of the question, whether the petition shows any right to recover damages on account of the alleged extortion. On this point appellees' counsel say: "We do not think the fees received by the notary were illegal or extortionate in the sense of the criminal statute. They were the ordinary and usual fees charged for protesting, and if the appellant had declined to pay, the notary had no means of compelling him to do so, either by seizing his person or property. The act was purely voluntary and unconstrained on the part of the appellant. It is not even alleged that he paid them under protest, or in anywise signified his unwillingness or objection to do so."

We approve of this position, and hold that the fees, having been paid by the plaintiff voluntarily, with full knowledge of all the facts, and at most only under a mistake of law, can not be recovered back, unless he is entitled to do so by virtue of our statute which prescribes a penalty for the benefit of the injured party against the officer for receiving as well as demanding illegal fees under certain circumstances.

City of Houston v. Feeser, 76 Texas, 365; Taylor v. Hall, 71 Texas, 213. Article 2421 of the Revised Statutes extends the penalty only where the officer has demanded and received "higher fees" or "any fee" not allowed by title 42 of the statutes.  Under the construction heretofore given to very similar provisions of law by both the Supreme Court and Court of Appeals, the acts of the defendants as shown by the petition are not within the purview of article 2421, and do not amount to extortion as there defined.   Orton v. Engledow, 8 Texas, 206; Hays v. Stewart, 8 Texas, 358; Smith v. The State, 10 Texas Ct. App., 413.  It is intimated in Hays v. Stewart, supra, that while the fourfold penalty could not be recovered under such circumstances, yet the amount of fees illegally received by the officer might be; but the court did not advert to the effect of a voluntary payment with knowledge of the facts, or to the want of any power in the officer to enforce payment had it been refused.   Article 240 of the Penal Code, even as amended, confers no right to recover back the fees when they are such as are prescribed by law for the services performed and have been voluntarily paid; and we conclude, therefore, that the plaintiff under the facts stated in the petition was not entitled to recover as a part of his damages the fees he had paid the notary.   Millar v. Douglass, 42 Texas, 288; 1 Dan. Neg. Inst., sec. 934.

The decision of this question where the amount is clearly below the jurisdiction of the District Court is only important, therefore, as affecting the right to recover exemplary damages as claimed in the petition. That character of damages is not recoverable without some actual damage is also shown.  Trawick v. Martin Brown Co., 79 Texas, 460; Flanagan v. Womack, 54 Texas, 50.   The petition failing to disclose any right to recover actual damages, was insufficient upon the demurrer, and therefore the judgment should be affirmed.

*Affirmed.*