HERMAN LICKFETT v. CHARLES JORGENSON AND ANOTHER.[1]

February 7, 1930.

No. 27,649.

[1] Reported in 229 N. W. 138.

*Louis W. Martin,* for relator.

*Sam G. Anderson,* for respondents.

WILSON, C. J.

Certiorari to review an order of the industrial commission denying the relator compensation and also an order denying a rehearing.

Relator seeks compensation as the father of Alvin Lickfett, the deceased employe. The employe, while engaged in his work in a road construction crew and driving a four-horse team along a highway, was killed by a stroke of lightning. The horses were unattached to any vehicle or machine. The employe was walking behind holding the lines. One horse was also killed. The grade was four or five feet high. There were no fences, poles, trees, houses or other things in the vicinity.

On October 16, 1928, the commission filed its order approving and adopting the referee's findings denying compensation. This was upon the theory that death was not proximately caused by any accident arising out of and during the course of the employment but on the contrary that it resulted from an act of God. Notice of the decision was served upon relator's attorney on December 20, 1928. Nothing was done within the next 30 days as provided by G. S. 1923 (1 Mason, 1927) § 4320, to have a review of the decision.

On May 15, 1929, relator filed a petition for a rehearing claiming that he had found valuable information and authority which by diligence he had not previously discovered. A hearing was had upon the application at which both parties were represented. The application was denied and this proceeding followed. The last order is the only one before us for review since the time in which the first order could be reviewed has expired as indicated.

■ It is the settled law in this state that death of an employe caused by lightning is compensable only when he is exposed to injury from lightning by reason of the employment which necessarily accentuates the natural hazard from lightning and the accident is natural to the employment. It is necessary that the employment expose the employe to the hazard in some way peculiar to the employment so that he does not stand in relation thereto the same as the public generally. See State ex rel. Peoples C. & I. Co. v. District Court, 129 Minn. 502, 153 N. W. 119, L. R. A. 1916A, 344; Dunningan v. Clinton Falls Nursery Co. 155 Minn. 286, 193 N. W. 466; Wiggins v. Industrial Accident Board, 54 Mont. 335, 170 P. 9, L. R. A. 1918F, 932, Ann. Cas. 1918E, 1164; Griffith v. Cole Bros. 183 Iowa, 415, 165 N. W. 577, L. R. A. 1918F, 923; Klawinski v. L. S. & M. S. Ry. Co. 185 Mich. 643, 152 N. W. 213, L. R. A. 1916A, 342; Madura v. City of New York, 238 N. Y. 214, 144 N. E. 505.

■ Relator insists that the chance of being struck by lightning was enhanced by the employe's being with the large horses on the high roadway in the absence of other objects above the ground. The authority and information which he submitted with his application for a rehearing is a statement made by Mr. F. W. Peek, Jr. of the General Electric Company of Pittsfield, Massachusetts, who it is said is an expert of great ability on the phenomena of electricity and lightning. The statement is contained in a brochure covering an address made by the author before the Franklin Institute at Philadelphia, and among other things he discusses the chances of being struck by lightning and in relation thereto makes this statement:

"Chances of being struck. The above data offers a means of estimating the chance of objects of different heights being struck dur-

ing a thunderstorm when the cloud is overhead and of sufficient voltage to discharge to earth.

"Assume a cloud 1,000 feet high. A six-foot man on a plane directly under the storm center would be hit 15 times out of every 100 strokes, while a 25-foot building would be hit every time. A man flat on the ground would be struck about once for every 100 strokes. An 18.5 foot building directly under the storm center would be struck 84 times out of 100 hits."

Relator asks us, as he asked the commission, to take judicial notice of the assertions made in the above statement as accepted facts, not because Mr. Peek has stated them but on the theory that he has stated them because they are true. We are asked to say that this statement is logically apparent and well known to men of science. It may be. It is extremely technical. Few experts have spoken in relation thereto. It seems to us however that it is a well reasoned conclusion by a great scientist in his field of endeavor and, except as to a limited extent, we have no way of saying that it is true or untrue, much less to say that the assertion covers facts so well known that we may take judicial notice thereof.

We may take judicial notice of that which may be regarded as common knowledge of every person of ordinary intelligence; of that which is or ought to be generally known. We do not take judicial notice of things which are not of common and general understanding. We may take judicial notice of scientific facts which universal experience has rendered axiomatic, that is, generally recognized scientific facts; but relator asks more than that. The doctrine should be extended where it may be reasonably accepted rather than restricted; yet we cannot take judicial notice of such facts as are known, if at all, only by a specially informed class of persons. In the instant case we may take notice of the use of lightning rods and that they are to some extent effectual within their immediate area, but to go to the extent now sought would take us into the field known only, if at all, to the scientist and the technician. The rule does not permit that. The commission correctly rejected the application of the doctrine of judicial notice.

The granting of the rehearing rested in the sound discretion of the commission. Ogrosky v. Commonwealth Elec. Co. 172 Minn. 46, 214 N. W. 765; Delich v. Thompson-Starret Co. 175 Minn. 612, 220 N. W. 408. We cannot say there was an abuse of such discretion.

Affirmed.

[1]Reported in 229 N. W. 136.