**MONTGOMERY WARD & CO. et al. v. PEASTER.**

No. 2428.

Court of Civil Appeals of Texas. Eastland.

Jan. 7, 1944.

Rehearing Denied Feb. 11, 1944.

Cox & Hayden and Wagstaff, Harwell, Douthit & Alvis, all of Abilene, for appellants.

Scarborough, Yates & Scarborough, of Abilene, for appellee.

FUNDERBURK, Justice.

This is a slander suit. G. H. Peaster, formerly employee of Montgomery Ward & Company and assistant manager, in Abilene, of said employer brought this suit against Montgomery. Ward & Company, E. F. Pounders, and Willmark Service System, Inc. The alleged defamatory words consisted of a question by E. F. Pounders, manager aforesaid, directed to Mrs. Sarah Berman, employee of Willmark Service System, Inc., and the latter's answer to the question, as follows:

"Q. [Pounders pointing to Peaster] Is that the man who sold you the two pairs of shoes for $2.00 and did not ring up the money? A. He is the man who sold me the shoes for $2.00 and did not ring the money up."

Willmark Service System, Inc., was under contract with Montgomery Ward & Company to furnish services of such nature that the alleged purchase of two pairs of shoes by Mrs. Berman and the reporting to the employer of any violations of rules or acts of dishonesty was in the line of her duty.

In addition to the alleged slander, a conspiracy by all the defendants—and in pursuance of which said question was asked and answer given—to besmirch and blacken the reputation of plaintiff was alleged.

In a jury trial, upon rendition of a special verdict in favor of plaintiff, including a finding of damages in the sum of $1,000, judgment was rendered accordingly. The defendants have appealed.

The first point is to the effect that the alleged defamatory words do not amount to a charge or accusation by any of the appellants that Peaster stole the $2. In other words, the point is made, in effect, that the nature and import of the words related merely to the violation of a store rule and did not import an accusation that plaintiff stole the $2 or was dishonest.

If it be assumed that the question and answer show a defamation for which Willmark Service System, Inc., would be liable, it is not clearly apparent that the same would be true of Montgomery Ward & Company or E. F. Pounders. There was no evidence, we think, to support the allegations of a conspiracy. If, for example, the question by Pounders had been:

Is that the man you say sold you two pair of shoes for $2 and did not ring up the money?, the question and answer, in our opinion, as a matter of law, would not have constituted an accusation by Pounders of any wrong on the part of Peaster. A question which by its statement implies the assertion of no fact, the statement of which may be defamatory, is not rendered defamatory merely by the answer. If, therefore, one party asks such a question, which is answered by another, only the one so answering would, in our opinion, be chargeable with the defamation. But, as we see it, the alleged question of Pounders implied the assertion that some employee of Montgomery Ward & Company had sold Mrs. Berman two pairs of shoes for $2, and "did not ring up the money". The question itself was, therefore, an invitation to Mrs. Berman to make a defamatory answer, not as to some uncertain employee, but as to the plaintiff. If, therefore, the alleged defamatory language was a defamation by the employee of Willmark Service System, Inc., it was also a defamation by Pounders and, being made in the course of his employment, one for which Montgomery Ward & Company might be liable.

■ It is a question of some difficulty, but one necessary, to be determined, whether the alleged defamatory language, if defamatory, was slanderous per se. Is it a matter of common knowledge that a statement that a store clerk made a sale and did not ring it up on the cash register the equivalent of a statement that he stole or embezzled the money? That, it is believed, is another way of stating the question. After careful consideration we are inclined to think that assuming the language to be capable of being shown to be defama-

tory, it is not defamatory or slanderous per se. Pittsburgh, A. & M. Pass. Ry. Co. v. McCurdy, 114 Pa. 554, 8 A. 230, 60 Am. Rep. 363.

■ It is a reasonable inference that plaintiff by alleging its meaning considered that the language required explanation in order to show its defamatory import. Such an explanation is the function of an innuendo. If particular language alleged to be defamatory may, or may not, be so, according to other facts or circumstances, then an innuendo is required in order to tender as an issue the fact that the words conveyed to hearers the defamatory meaning. In a slander suit, not involving an imputation of unchastity in a female, if an innuendo is required, then the allegation and proof of special damages is also required in order to authorize a recovery. Hatcher v. Range, 98 Tex. 85, 81 S.W. 289; Morrison v. Dean, Tex.Civ.App., 104 S.W. 505; Hirshfield v. Forth Worth Nat'l. Bank et al., 83 Tex. 452, 18 S.W. 743, 15 L.R.A. 639, 29 Am.St.Rep. 660; Knapp & Co. v. Campbell, 14 Tex.Civ.App. 199, 36 S.W. 765; Fry v. McCord, 95 Tenn. 678, 33 S.W. 568; 27 Tex.Jur. p. 590; 36 C.J. p. 1150, § 17; 17 R.C.L. p. 264, § 14; 33 Am. Jur. p. 39, § 5. ("Words which are libelous per se do not need an innuendo, and conversely, words which need an innuendo are not libelous per se.") [1] Plaintiff's petition did not allege and the evidence did not show, special damages, and hence we conclude that appellants' said second point presenting that matter must be sustained.

■ Appellants' third, fourth and fifth points, insofar as they assume, or present as a contention, that if only employees of defendants heard the alleged defamatory words, that would not constitute an action-

---

[1] Our statutory libel laws had the effect of extending the field of libels per se as recognized by the common law. In Guisti v. Galveston Tribune, 105 Tex. 497, 150 S.W. 874, 152 S.W. 167, innuendos were held to be permissible to show the true nature of the alleged defamation and their use, even when necessary, did not have the effect of making the defamation any the less libelous per se. Since this was the result of statutes relating to libels, it did not apply to defamation constituting slander only. At one time a slander where the language itself imputed a want of chastity in a female was not libelous per se. Linney v. Maton, 13 Tex. 449; McQueen v. Fulgham, 27 Tex. 463; Ross v. Fitch, 58 Tex. 148. After a statute was passed

making slanderous utterances of a certain kind a criminal offense, words imputing a want of chastity were held to be slanderous per se, not because of such import, but because they also imported the commission of a criminal offense. Hatcher v. Range, 98 Tex. 85, 81 S.W. 289. There have been no statutory changes affecting the decision in the last named case. Hence, it seems to be the law that if a defamation constituting a slander is not defamatory because it imputes the commission of a criminal offense, it is not slanderous per se and a cause of action is not stated in the absence of any averment of special damages. Cases, therefore, involving libel in which the necessity for innuendos to show the libel seem not to be applicable to slander suits.

able publication of a slander, seems to us to be untenable. Employees of Montgomery Ward & Company, if any, who had no duty with reference to the transaction, would, we have no doubt, be the same as any other members of the public. Any other employee would be no different except with reference to the question of privilege.

■ But insofar as said points present the contention that it was a necessary issue whether there was any hearer of the alleged defamatory words who understood them in their defamatory sense, and that there was no proof upon that issue, we think they should be sustained. The real issue was publication. It is just as essential in a slander case as in a libel case that the defamatory words be published, that is, heard by one or more third persons. If the language is susceptible to a meaning not defamatory and another meaning which is defamatory, it would not be a publication if, in fact, they were only heard by those who understood them in their nondefamatory sense. Hence, we think, evidence that at least one hearer understood the words in the defamatory sense was necessary to raise the issue. In Democrat Publishing Co. v. Jones, 83 Tex. 302, 18 S.W. 652, 653, the Court said: "The language of the publication is capable of the meaning ascribed to it by the innuendos, and, in such case, it should be left to the jury to say whether, in fact, it was so understood." See also Hitzfelder v. Koppelmann, 30 Tex. Civ.App. 162, 70 S.W. 353. Upon this point Corpus Juris says: "Since in order to constitute a publication it is necessary that some third person understood the defamatory matter, where the words are capable of conveying the defamatory meaning claimed for them, and also equally capable of conveying some other and innocent meaning, there must be averments that third persons understood the language as conveying the alleged defamatory meaning." 37 C.J. p. 34, § 355, and authorities cited. It would seem to follow that if such averment be necessary, proof of the averment is also necessary.

We find it unnecessary to determine the point that there was no evidence to show that any third person heard the alleged defamatory language. That we recognize as a close question, and its determination becomes unnecessary, since we have no difficulty in reaching the conclusion that there was no evidence that any third person who may have heard the defamatory words understood them to accuse the plaintiff of theft or dishonesty.

■ We are of the opinion that the court erred as' contended by the seventh point, in admitting the testimony of W. D. Ray and wife regarding a conversation in Austin, Texas, made long after the alleged slander, by Stephenson, an employee of Montgomery Ward & Company, to the effect that "Willmark caught Mr. Peaster stealing $2.00 and he didn't get a store." There was no evidence that said conversation had reference to any duty of Stephenson in the course of his employment or of Ray in his contemplated future employment. As to any of the defendants, · it was hearsay and prejudicial.

It is deemed unnecessary to express any opinion upon the sixth point, further than it may be determined in the decision of the other points herein discussed.

Being of opinion that the judgment should be reversed and the cause remanded, it is accordingly so ordered.

### On Rehearing

If, to say of a clerk such as Peaster, that he sold shoes for $2 and "did not ring the money up" imports the same as saying that he sold the shoes for $2 and "stole" the money, that can in any view be true only in a special or qualified sense. The natural meaning of the words in themselves very obviously carry no such import. Such import, therefore, if it exists results from some understood connection or association of the two ideas, (1st) the theft (more properly embezzlement) of the price of the shoes, and (2nd) failure to ring up the money. Is it common knowledge that if a clerk in the circumstances of Peaster in this case makes a sale, collects the money and does not at once "ring it up" on the cash register, if any, the only reason (none other appearing) is that he intends to steal or embezzle the money? That, it is believed, is a fair statement of the question for decision, or perhaps more accurately speaking of the question determinative of the question for decision.

Aside from the case cited in our original opinion, we know of none which furnishes a real precedent. The question undoubtedly is one embraced in the subject of evidence and that branch thereof dealing with matters of common knowledge and judicial knowledge, notice or cognizance. For present purposes we may assume that if our question deals with a matter of common

knowledge, then it is also a matter of judicial knowledge or notice.

"Judicial notice," according to the black letter text of Corpus Juris Secundum, "is the cognizance of certain facts which judges and jurors may properly take and act on without proof because they already know them." 31 C.J.S., Evidence, p. 509, § 6. For example according to the same authority, "Judicial notice will be taken of the general course of business and the usual methods of transacting it." Id., p. 543, § 28. In the numerous subdivisions of the subject we find none which seems to include certainly and exactly the facts of this case. Under one subdivision entitled "Meaning of Words and Phrases", it is said: "Judicial notice may be taken of the usual meanings of words and phrases." Id., p. 648, § 67. But our question is not what does the language—"He is the man who sold me the shoes for $2.00 and did not ring the money up"—mean, but rather, is the act thus described so invariably accompanied by an intent to steal or embezzle that as a matter of common knowledge the utterance of the words implies the affirmation of such intent. Considering—as we freely do—that the court could and should take judicial notice of the meaning of the words, it does not follow necessarily that it could properly take judicial knowledge of such particular implication if any from the words. The implication is not a necessary one. It isn't inherent in the natural import of the words. If the implication exists at all, it does so, as already said, because of the association of the fact implied with the fact expressed by the words.

We doubt if it is a matter of common knowledge that business establishments generally have the system of registering sales such as the evidence shows was employed in this case. If only some establishments have such a system, but the majority do not, then the view that the question under consideration does not involve a matter of common knowledge has support in the principle that courts cannot take judicial notice of such facts as are known, if at all, only by a specially informed class of persons. Lickfelt v. Jorgenson; 179 Minn. 321, 229 N.W. 138. Under this rule, if every employee of Montgomery Ward & Company and every employee of other businesses using the same system of registering sales did understand that failure to ring up a sale implied a dishonest appropriation of the money, it would not follow necessarily that such implication was a matter of common knowledge, and that therefore the court and jury could take judicial cognizance of it.

We think our conclusion is further supported by a test as follows: "The test has been said to be: (1) Is the fact one of common, everyday knowledge in the jurisdiction, which every one of average intelligence and knowledge of things about him can be presumed to know? (2) Is it certain and indisputable?" 31 C.J.S. p. 513, § 9. Under said "2nd" subdivision is this note: "It is not permissible for the court to take judicial knowledge of a fact that may be disputed by competent evidence." Id., Note 88. In this record there is competent evidence disputing the fact that failure to ring up a sale implies theft or dishonest appropriation of the money.

After further careful consideration we are not convinced that we were in error in our conclusion upon that point as expressed in the original opinion.

We have not held that the alleged slanderous statements were not made in the presence or hearing of others. Hence, the Fourth Assignment of Error asserting that we did is without merit.

Appellee argues that "The question itself [meaning the question constituting part of the alleged slander] implies knowledge on the part of Pounders that he did not know that she [Willmark, Inc. employee] claimed that Peaster had sold the shoes and had not rung up the money, and yet you say there is no evidence of a conspiracy." We cannot assent to the correctness of the premise. It seems clear to us that Pounder's question, while as said in the original opinion it assumed that some employee of Montgomery Ward & Company had done so, carried no assumption or implication that Peaster was such employee.

Our action in remanding the case, rather than rendering judgment for the appellants, was prompted by the view that it was required by the decision in Williams v. Safety Casualty Co., 129 Tex. 184, 102 S.W.2d 178, wherein the Supreme Court, apparently contrary to its former decision in Mitchum v. Chicago, R. I. & G. Ry. Co., 107 Tex. 34, 173 S.W. 878, and other cases, committed itself to the proposition that even where a court of civil appeals reverses a case on the ground of error of a

trial court in refusing to instruct a verdict for Appellant, nevertheless, upon such reversal the case should be remanded, rather than rendered, if it appears the case was tried on an erroneous theory of law or was not fully developed. Mindful of the fact that in cases of this sort, "any damage however slight has been said to be sufficient to sustain the action" [McQueen v. Fulgham, 27 Tex. 463, 469] it does not appear conclusively that no special damages could be recovered. Hence, we are not persuaded that we should be influenced by appellee's suggestion to the effect if the judgment of reversal stands that we ought to render judgment, made as it is with the express reservation that we are not requested so to do.

It is, therefore, our conclusion that the motion for rehearing should be overruled, and it is accordingly so ordered.