## L. J. Gartman et al v. Tom Hedgpeth.

No. 7718. Decided December 10, 1941.
(157 S. W., 2d Series, 139.)

*Arthur R. Eidson,* of Hamilton, for plaintiff in error.

Where an article is unambiguous and not libelous or defamatory it is the duty of the court to sustain a general demurred. Southern Pub. Co. v. Foster, 53 S. W. (2d) 1014; Deen v. Snyder, 57 S. W. (2d) 338; Houston Printing Co. v. Hunter, 105 S. W. (2d) 312, 316.

*Allen & Allen,* of Hamilton, for defendant in error.

Where the petition contains an averment showing the defendant used the words, not only in a defamatory sense but that they were understood as conveying the alleged defamatory meaning, it is not subject to exception. Clark v. Bohms 37 S. W. 347; Moore v. Leverett, 52 S. W. (2d) 252; Great Atl. & Pac. Tea Co. v. Harris, 75 S. W. (2d) 974.

MR. JUDGE BREWSTER delivered the opinion of the Commission of Appeals, Section A.

This is a suit for libel brought by defendant in error against plaintiffs in error growing out of the publication of the following notice:

### "NOTICE TO THE PUBLIC

This is to notify the public that Tom Hedgpeth is no longer connected with J. Garvey Home Appliance Store. Pay all money due on merchandise purchased from this Company to L. J. Gartman or J. Garvey.

J. Garvey Home Appliance Store."

The trial court sustained a general demurred to Hedgpeth's petition and dismissed his suit upon his refusal to amend. The Court of Civil Appeals reversed and remanded the cause. See 136 S. W. (2d) 641.

Obviously, the language of the aforesaid notice is not libelous *per se;* that is, standing alone it is not libel as defined by Article 5430 R. C. S. (1925). Hedgpeth recognized this fact and sought to show by innuendo averments that the notice fell within the terms of the statute. Whether he succeeded is the question now before us.

After alleging that defendants published the notice, the plaintiff averred that the defendants thereby meant and intended to mean that he, Hedgpeth, had been discharged from employment; that he was untrustworthy and dishonest, and would be guilty of swindling, in collecting money without authority, if numerous debtors were not warned against him; that thereby the public were warned that if they paid any money due them to plaintiff and it was not accounted for by him that their debts would not be discharged thereby; that plaintiff would seek to collect defendants' money in the absence of authority to do so, if it were tendered him; that defendants were discharging a duty to those owing them in giving a public notice so that the public would not be imposed upon and swindled or defendants defrauded of their money and the fact that plaintiff was no longer connected with defendants was because of previous embezzlement or some related offense.

In determining whether the innuendo averments stated a cause of action for libel it may be assumed that an employer

has a right to notify his patrons that he has dispensed with the services of a named employee and state his reasons, if true (Ratzel v. New York News Pub. Co., 67 N. Y. App. Div. 598, 73 N. Y. S., 849), for the reason that he has the right to publish all that he has reasonable and probable cause to believe necessary to protect his property from loss or injury (Townsend, Libel & Slander, 4th Ed. Sec. 240, p. 388). Manifestly, such publication must not violate our statute defining libel as it would, in such event, be unreasonable and without probable cause.

It must be assumed also that in weighing a general demurrer the allegations in the petition will be taken as true. However, as to a libel petition, "if the publication is not actionable *per se* it is the duty of the court to determine whether the words used are capable of the meaning ascribed by the innuendo; and if in their natural meaning they are incapable of such interpretation, the court should withhold the case from the jury by sustaining a general demurred." 27 Tex. Jur., Sec. 16, p. 615. See also 37 C. J. 52.

If the language actually used by the defendants in the above quoted notice admits of no ambiguity, the innuendo averments were of no avail and the trial court properly sustained the general demurred. Guisti v. Galventon Tribune, 105 Texas 497, 150 S. W. 874. If it presents ambiguity, it is tested by what effect the language would have upon the mind of the ordinary reader and it would be for the jury to determine whether to such ordinary mind it suggested what plaintiff, in his innuendo averments, claims it suggested, and the trial court would be in error in sustaining the general demurrer. Belo & Co. v. Smith, 91 Texas 221, 42 S. W. 850.

Counsel cite us no Texas case on all fours with that at bar and we have found none. However, we believe Mulligan v. Cole et al, L. R. 10 Q. B. 549, an English case, is such a case. There the newspaper notice, over the signatures of the defendants, was as follows:

"Walsall Science and Art Institute. The public are respectfully informed that Mr. Mulligan's (meaning plaintiff's) connection with the institute has ceased and that he is not authorized to receive subscriptions on its behalf."

Plaintiff alleged that it was meant thereby that he had falsely assumed and pretended to be authorized to receive subscrip-

tions on behalf of said institute. The trial court held that the advertisement did not bear the meaning imputed to it by the innuendo. This view as sustained by the Court of Queen's Bench.

"Reading the words in their ordinary sense, they amount to no more than information to the public that the plaintiff, Mr. Mulligan, who had been connected with the institute, no longer had any connection with it, and was therefore not authorized to receive subscriptions for it, and that subscriptions paid to him would not be for it. I cannot help thinking that to an ordinary person it would convey no more than the legitimate information, and that no such defamatory meaning as that imputed by the innuendo, nor any other defamatory meaning, was intended to be expressed."

In Quinn v. Prudential Ins. Co. 116 Iowa 522, 90 N. W. 349, the Supreme Court of Iowa was dealing with facts parallel to those before us. There the notice published by the defendant read:

"I herewith inform the public that Pat Quinn, Jr., (plaintiff) formerly an agent for me, is no longer employed in any capacity by the Prudential Insurance Co., nor has he been for the past year. Our policy holders are hereby notified not to pay him any premiums but to pay to my authorized agents, or at my office."

The plaintiff alleged that the publication meant that he had been collecting premiums from the policy holders of defendant after his employment, and made other allegations of injury. In holding that a jury verdict for the plaintiff had not sufficient support in the evidence, the Court said:

"Even if it should be considered (as it cannot) that, in notifying defendant's policy holders not to pay premiums to the plaintiff, there was an implied statement that he had been collecting such premiums since he ceased to be in defendant's employment, such statement would not be libelous, in the absence of a charge that in doing so he acted corrputly or dishonestly."

Then the court points out that the record merely showed that plaintiff had been employed as defendant's agent at Dubuque, which position he had resigned some months before the notice was published without any showing that there was connected therewith any ill feeling between the parties; that

there was no evidence that plaintiff had assumed to collect any premiums after the agency terminated or that defendant intended to be so understood in publishing the notice.

Another case in point is Boynton v. Remington et al, decided by the Supreme Court of Massachussetts and reported in 3 Allen, (85 Mass.) at page 397. There the petition alleged that plaintiff was a coal dealer in Lowell and kept and advertised for sale the genuine, original Franklin coal, which had been shipped by the defendants who, well knowing the premises, published of an concerning him the following advertisement:

"Caution. The subscribers, the only shippers of the true and original Franklin coal, notice that other coal-dealers in Lowell than our agent, Mr. W. E. Livingston, advertise Franklin coal. We take this method of cautioning the public against buying of other parties than Mr. Livingston, if they hope to get the genuine article, as we have neither sold nor shipped any Franklin coal to any party in Lowell except our agent Mr. Livingston."

A general demurred was sustained. Such action was approved because the notice "contains only a caution to the public to deal with the agent of the defendants, if they wished to procure the genuine article. This was within the privilege of fair dealing and cannot be tortured into a disparagement of the plaintiff's character."

With these authorities to guide us, we conclude that the trial court was correct in sustaining the general demurrer to Hedgpeth's petition. We do not believe that the language employed by the defendants would reasonably suggest to the mind of the average reader what the innuendo averments say it would. The innuendo explains the words used and annexes to them their proper meaning, if they are ambiguous. If the words employed are in no proper sense ambiguous or doubtful and in their ordinary and proper signification convey no defamatory meaning, such meaning cannot be enlarged or restricted by innuendo averments. Quinn v. Prudential Ins. Co., supra. If the language claimed to be defamatory is not reasonably susceptible of the meaning ascribed to it by innuendo, the innuendo will be unavailing. A general demurrer admits only the truth of such inferences alleged as are reasonably warranted from the facts pleaded, not the truth of unreasonable or unwarranted inferences, and should be sustained if the innuendo is not war-

ranted and the language used is not otherwise actionable. 27 Tex. Jur., sec. 77, p. 738.

The language here complained of stated two facts: (1) that plaintiff's connection with defendants' business had ceased; (2) that all moneys due for merchandise should thereafter be paid to the defendants. We do not think that such statement was calculated reasonably to convey to the mind of the average reader that Hedgpeth had been discharged or that he was untrustworthy and dishonest and would be guilty of swindling or that he might embezzle moneys paid him for defendants or that he had previously embezzled any of their money. Plaintiff does allege that he had never collected any money for defendants while in their service, but, even so, he was engaged in selling refrigerators for them and anyone buying from him might properly assume that he could collect therefore, although he had no such authority and had never attempted to exercise any such authority and had not been called upon so to do. Plaintiff does not allege that any disagreement with defendants preceded or accompanied his discharge. On the contrary, he does allege, in effect, that he knew of no dissatisfaction with his services until after the notice had been published. The notice here published is very similar in content and attending circumstances to that often published at the termination of commercial relationships, e.g., partnerships, where the effect of the dissolution notice is that the firm has been dissolved and that all accounts due the firm are to be paid to the remaining partner or partners. Such notice is properly considered as a mere statement of facts with the purpose to save the trouble and annoyance both to the public and to the retiring partner that would result from efforts of those owing the firm to pay him after his connection had ceased.

Considering the language before us in the light of the alleged attendant circumstances, we do not believe the same would be construed by the average reader as any reflection on the character and standing of the plaintiff. That is, we think that to hold that the plaintiff's innuendoes can be reasonably inferred from the notice in question would amount to giving its language a tortuous, unreasonable and unwarranted construction. See So. Pub. Co. v. Foster (Com. App.), 53 S. W. (2d) 1014; Mo. Pac. Ry. Co. v. Richmond, 73 Texas 568, 11 S. W. 555; Ratzel v. N. Y. News Pub. Co., supra; Ertheiler v. Bernheim,

37 N. Y. App. Div. 472, 56 N. Y. S., 26; Pittsburg R. Co. v. McCurdy, 114 Penn. St. 554, 60 Am. Rep. 363.

Accordingly, the judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Opinion adopted by the Supreme Court December 10, 1941.