Ralph V. EASLEY, Appellant,

v.

EXPRESS PUBLISHING COMPANY,
Appellee.

No. 13098.

Court of Civil Appeals of Texas.

San Antonio.

Jan. 23, 1957.

Rehearing Denied March 20, 1957.

Schweppe, Schweppe & Allison, San Antonio, for appellant.

Denman, Franklin & Denman, Carl Wright Johnson, Nat L. Hardy, San Antonio, for appellee.

POPE, Justice.

Plaintiff, Ralph V. Easley, refused to amend his petition after the trial court sustained special exceptions to his allegations of a newspaper libel, and the trial court dismissed the suit. The narrow issue on this appeal is whether the petition alleges words of defamation. Because the case was dismissed after sustaining exceptions, the question is one of law. The court never reached the questions of fact nor the defenses to the libel charged.

Plaintiff, Easley, during March, 1954, was a member of the San Antonio City Council. On March 24th the defendant published a front-page article which reported the formation of a "big-time gambling combine" in San Antonio. The article stated that several "gambling czars from big-money hideaways" and two "public officials" met and formed a gamblers "cooperative." The purposes of the meeting and the "formation of the crime clique" were to oust the Chief of Police, to "open wide the city," and to preserve an open-city policy. On March 25 and 26, the defendant published an additional article, written by Paul Thompson, which described a tense struggle for power between two factions of the City Council. One faction of three persons he called "White-Wingers, * * * so tagged because it reputedly takes orders from ailing Mayor Jack White." Three other council members composed the other faction. Mr. R. L. Lester, a seventh council member, was described as the one who held the balance of power. The burden of

the last article was that each of the evenly divided factions was seeking to win Lester to its side. The article thus presented a situation of a divided city council, and then stated:

"What Lester may not know is that the White Wing, given half a chance, will dump Winton as manager and then reach out for the pelt of Police Chief George Bichsel. This was the aim the last time Easley, White & Company got their way and it will be the aim again. All these boys ask is the chance.

"An honest fellow, Lester may not wish to open up the town for racketeers. And he may not wish to bear the stigma of firing Winton without cause.

"It is not easy to see how he can avoid these two things if he lets the White Wingers establish him as mayor.

"On the other hand, Councilman Lester can achieve a lifelong ambition, sit proudly as the city's No. 1 citizen, rule wisely and go down in the archives as a good and honorable man—all by the simple expedient of playing ball with anti-White members of the council."

Plaintiff, Easley, after setting forth those articles in full, alleged that the articles falsely implied that he favored turning San Antonio into an "open city" and was actively working and plotting with gamblers and racketeers for that purpose; that they falsely implied that he was a dishonest city councilman, guilty of misconduct and lacking in integrity; and that he suffered injury to his reputation.

The court sustained the following special exceptions: That the first article did not in any manner identify the plaintiff as one of "two public officials," who attended the gamblers' organizational meeting; that none of the innuendoes alleged can be drawn from the articles; that the last article contained no language which could be

construed to mean that Easley favored turning the city into an open city, or that he was a corrupt and dishonorable councilman, or that the articles injured his reputation for honesty and integrity. The greater part of the articles is non-defamatory. Since the entire action was dismissed, we must determine if any part may be libelous.

■ The first article published on March 24 did not name any persons, but stated that two public officials attended the meeting of gamblers. Neither of the articles identified these two public officials, and the articles are not subject to the construction or implication that Easley was one of them. The exception was correctly sustained. The conclusion, however, that the first article, therefore, becomes immaterial and should be stricken is erroneous. In passing upon the sufficiency of the pleadings and the presence of defamatory words, the context of both articles should be considered. Evans v. Houston Printing Corporation, Tex.Civ.App., 217 S.W.2d 85, 87; Express Publishing Co. v. Orsborn, Tex.Civ.App., 151 S.W. 574.

Though Easley was not identified as one of the public officials who attended the organizational meeting of the gamblers, the first article is pertinent to the libel charged in the other article. The last article, to a reasonable reader, may mean that Easley, though not at the meeting, would use and was using his official position to achieve the unlawful purposes planned at that meeting by the "crime clique."

The greater part of the last article is not defamatory, and the court correctly so held, but we can not say that the articles were wholly non-defamatory. A reader may fairly construe the articles to mean that Easley and the others will "dump" the city manager and chief of police; that Lester, the pivotal council member, could avoid this result because he is "honest." The article is subject to the meaning that Mr. Lester could save the town from racketeers, gamblers, the gambling syndicate, the crime clique, the "White-Wingers." The article to an ordinary reader may insinuate that Easley is dishonest, a confederate to the criminal element mentioned, dishonorable, and a corrupt public official.

■■ The quoted portion of the Thompson article in our opinion is ambiguous. When it is determined that an ambiguity exists, a fact matter is presented and the court "should by the submission of proper fact issues let the jury render its verdict on whether or not the article was fairly susceptible to the construction placed thereon by the plaintiff, and if the ordinary reader of the article would so understand it." Houston Printing Co. v. Hunter, Tex. Civ.App., 105 S.W.2d 312, 319; Id., 129 Tex. 652, 106 S.W.2d 1043. The same principle is announced in Gartman v. Hedgpeth, Tex. Com.App., 138 Tex. 73, 157 S.W.2d 139, 141, 138 A.L.R. 666. Accord, Moore v. Leverett, Tex.Com.App., 52 S.W.2d 252, 253; Guisti v. Galveston Tribune, 105 Tex. 497, 150 S.W. 874, Id., 105 Tex. 497, 152 S. W. 167; Belo & Co. v. Smith, 91 Tex. 221, 42 S.W. 850; Express Pub. Co. v. Southwell, Tex.Civ.App., 295 S.W. 180; 27 Tex. Jur., Libel and Slander, § 77. Restatement, Torts, § 641, says that the court determines whether a communication is capable of a defamatory meaning, and the jury determines whether a communication, capable of a defamatory meaning, was so understood by its recipient.

The quoted words in the Thompson article are ambiguous and therefore present issues of fact concerning their meaning.

The judgment is reversed and the cause remanded.