Charles M. WALKER, Appellant,

v.

GLOBE-NEWS PUBLISHING COMPANY, Inc., Appellee.

No. 7516.

Court of Civil Appeals of Texas.

Amarillo.

Sept. 27, 1965.

Rehearing Denied Oct. 25, 1965.

Carnahan & Fields, George S. McCarthy, Amarillo, for appellant.

Folley, Snodgrass, Calhoun & Kolius, Amarillo, for appellee.

DENTON, Chief Justice.

This is a libel suit brought by Charles M. Walker against the Globe-News Publishing Company, Inc., to recover damages resulting from alleged libelous articles appearing in the defendant's newspaper on July 19, 20, and 21, 1964. The trial court granted the defendant's motion for summary judg-

ment, and the plaintiff below has perfected this appeal.

The action is based on the three articles appearing in appellee's Amarillo newspaper. The first article appeared in defendant's Sunday edition on July 19, 1964, as follows:

"Two Amarillo businessmen were arrested Saturday in connection with an extensive burglary operation centered in Tulsa, Okla., and which involved the sale in several states of thousands of dollars in merchandise ranging from aircraft instruments to air compressors. An estimated $25,000 worth of stolen items have been recovered by Amarillo police.

"Charged with receiving and concealing stolen property were Bobby Gene Hunter of 2405 W. 4th., owner and operator of Hunter's Honda Sales, 806 Georgia, and Charles M. Walker of 5309 Gem Lake, with Walker Brothers Cement Contractors.

"They were arraigned Saturday morning before Justice of the Peace Cliff Roberts, released and ordered to post bond of $1,500 each by 10 a. m. Monday.

"Charges were filed after Tulsa police, who after more than six months of investigation, broke up a burglary ring in that city. Amarillo police have been working on the case with Tulsa authorities since May when aircraft instruments, stolen in Tulsa, were found in Amarillo.

"Two Tulsa men, Billy Joe Mann and Bobby Bluejacket, were arrested by Tulsa authorities and charged with burglary. Mann, who was brought to Amarillo by Tulsa authorities, told authorities here that he and Bluejacket had made several trips to Amarillo during the past six months and had made sales to Hunter and Walker.

"Police detectives had already recovered a major portion of the known items by Saturday afternoon from the homes and offices of Walker and several other locations in the area.

"The items include pistols, shotguns, rifles, a photocopy machine, posting machine, two tape recorders, two cameras, three adding machines, a calculator, aircraft radio and naviscalpel and other hospital equipment, and a diamond ring believed to be part of a recent $29,000 jewelry burglary in Tulsa.

"Also included in the recovered items was a $5,000 compressor unit in Trinidad, Colo.

"All of the stolen property is believed to have been taken from the city and county of Tulsa, and authorities there are still sifting through their reports.

" 'The more we investigate, the more cases we clear up'. a spokesman for the Tulsa police department said Saturday night. 'Some of these cases go back to 1963.' "

"He added that the loot came from burglaries of both homes and businesses, but mostly homes. Tulsa officials will make no estimate as to the total value merchandise stolen.

"According to Tulsa records Bluejacket, 34, is currently facing six charges in Tulsa County. He was freed Friday on bonds totaling $42,000 and had been out of jail only 1½ hours when he was picked up on additional forgery charges.

"The charges include armed robbery, forgery, concealing stolen property, and harboring a fugitive. He also faces a fugitive charge stemming from an armed robbery in Minneapolis, Minn.

"Police records indicate he was sentenced in 1948 to 99 years for first degree manslaughter. He was later paroled after the sentence was commuted to 50 years. In 1962, he received a pardon from Gov. George Nigh who served 11 days in office.

"Tulsa police said the ring has been distributing merchandise throughout the country and are known to have operated in Dallas, New Orleans, Wisconsin and California. Most of the activity has been in the Tulsa and Oklahoma City areas, however.

"Amarillo police said some of the stolen property was sold through an Amarillo surplus store."

A picture of appellant and Bobby Gene Hunter taken at the time they were being arraigned accompanied this article. Two condensed articles dealing with the same subject matter and the posting of bond by the two men appeared in appellee's newspaper the following two days. We see no need to quote them here.

Appellant attacks the trial court's action on the ground it erred in holding the newspaper's articles were privileged as a matter of law, and that the pleadings, affidavits and depositions on file presented a genuine issue of material fact. Appellee takes the position the articles published were fair, true, and impartial accounts of the proceedings in a court of justice and, as such, were privileged. The primary question to be determined is whether or not the published articles are within the privileged matters provided for in Article 5432, Vernon's Ann.Civ.St. Pertinent parts of that article provide:

"The publication of the following matters by any newspaper or periodical shall be deemed privileged and shall not be made the basis of any action for libel.

"1. A fair, true and impartial account of the proceedings in a court of justice, unless the court prohibits the publication of same when in the judgment of the court the ends of justice demand that the same should not be published and the court so orders, or any other official proceedings authorized by law in the administration of the law."

It is a settled rule of law that whether a publication is privileged or not is generally a question of law for the court to determine. When the language used in unambiguous, or where the facts and circumstances surrounding the publication are undisputed, it is for the court to decide whether or not it was privileged. Reagan v. Guardian Life Ins. Co., 140 Tex. 105, 166 S.W.2d 909; Fitzjarrald v. Panhandle Publishing Co., 149 Tex. 87, 228 S.W.2d 499; Newton v. Dallas Morning News, (Tex.Civ.App.), 376 S.W.2d 396. A published account of the proceedings in a court of justice or other proceedings authorized by law in the administration of the law is privileged only if it is a fair, true and impartial account of such proceedings. Caylor v. Nunn, (Tex.Civ.App.), 235 S.W. 264; 36 Texas Jurs.2d, Libel and Slander, Section 84. We must therefore determine in the light of the pleadings, affidavits, and depositions if the published accounts are privileged under Section 1 of Article 5432 and the applicable rules.

It is without dispute that the published reports are based on a proceeding in a court of justice. There were on file with the Justices of the Peace, Precinct 1, Places 1 and 2, of Potter County, Texas, the following instruments: affidavits for search warrants by two Tulsa, Oklahoma detectives; affidavits for search warrants by Billie Joe Mann, one of the persons accused of stealing the merchandise involved herein; a complaint sworn to by an Amarillo detective before the District Attorney charging appellant did "fraudulently receive from Billie Joe Mann and did fraudulently conceal, certain property, to-wit: one yellow gold ring with a diamond center stone and surrounded by smaller diamond stones, and one seven millimeter Luger pistol and the same being of the falue of over fifty ($50.00) Dollars; which said property had been theretofore acquired by another in such manner as that the acquisition thereof comes within the meaning of the term theft; and the said CHARLES M. WALKER then and there received and

concealed the said property, knowing the same to have been so acquired."; a commitment which was issued by the Justice of the Peace directing the Sheriff to commit appellant to jail on the charge of "receiving and concealing stolen property"; and a warrant of arrest issued by the Justice of the Peace on the same charge. Mann's affidavit discloses he stole the listed goods in Tulsa, Oklahoma, and that certain items were sold to appellant by Mann and Robert Bluejacket and that appellant "knew the same to be stolen * * * because we both told him where and how the property was acquired." Affidavits, search warrants, commitments, and warrants of arrest were also on file in the same courts charging Bobby Gene Hunter with the same offenses as those charged against appellant. In fact the cases filed against these two were filed simultaneously, and they were both arraigned at the same time. The officers' affidavits disclose the large amount of goods stolen in the Tulsa, Oklahoma area by Mann and Bluejacket and that they disposed of the merchandise in widely scattered parts of the country. All the instruments herein referred to were on file in the two justice courts prior to the publishing of the articles complained of.

Appellant makes no assertion the published articles were not based on a judicial proceeding but contends the articles were not a fair, true and accurate account of the proceedings. He argues the newspaper accounts at least by implication and innuendo connects appellant and Hunter together as members of a burglary ring; that it at least implied that $25,000 worth of stolen merchandise was recovered from Walker and Hunter; and that Walker's arrest cleared up a long-continuing burglary ring. Appellant makes other interpretations of the articles but these serve to illustrate his argument. We can not accept appellant's interpretation of the publications. The courts have held in this type of case that the articles must be interpret-

ed in the sense that the ordinary reader would understand. Caylor v. Nunn, supra; Express Publishing Co. v. Keeran, (Com. App.), 284 S.W. 913; Express Publishing Co. v. Gonzalez, (Tex.Civ.App.), 326 S.W. 2d 544, (Writ Dismissed). It is not necessary for the published account to be literally true in order to be privileged. The statutory requirement that it be true is satisfied if it be substantially true. Ray v. Times Publishing Co., (Com.App.), 12 S.W.2d 165.

A review of the published articles, when compared with the instruments on file in the justice courts, leads us to the conclusion no untrue statements appeared in the articles. The fact the newspaper reporters testified by deposition they did not get their information from the filed instruments themselves is of no significance. The information was obtained primarily from those who executed the instruments. It can not be denied Walker and Hunter were "arrested in connection with an extensive burglary operation centered in Tulsa". They were in fact charged with "receiving and concealing stolen property" taken from the Tulsa burglaries according to one man who admitted being involved in such burglaries. The fact that a large portion of the stolen property was recovered from Hunter rather than Walker is not such a departure from the undisputed facts to render the articles an untrue or unfair account of the proceedings. We further conclude the language of the articles complained of is unambiguous, and there was no basis for the need of explanatory evidence before a jury. Newton v. Dallas Morning News, supra; Gartman v. Hedgpeth, 138 Tex. 73, 157 S.W.2d 139, 138 A.L.R. 666, (Opinion Adopted); Herald-Post Publishing Co. v. Hervey, (Tex. Civ.App.), 282 S.W.2d 410, (NRE).

After reviewing the pleadings, affidavits and depositions in the light of the applicable rules, we are of the opinion the published articles constituted a fair, impartial, and substantially correct account of the charges

filed against appellant in the justice court. As such, the articles were privileged and not actionable.

The judgment of the trial court is affirmed.