

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-25-00685-CV

———————————————

GREG SMITH, BRENDA BARR MECKLEY, AND LISA LOSHELDER,
Appellants

V.

LINA RAMEY, Appellee

On Appeal from the 442nd District Court
Denton County, Texas
Trial Court No. 23-2592-442

Before Kerr, Bassel, and Wallach, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

## I. Introduction

In two issues argued in tandem, Appellants Greg Smith, Brenda Barr Meckley, and Lisa Loshelder seek interlocutory review of the denial of a motion to dismiss that invoked the Texas Citizens Participation Act (the TCPA). *See* Tex. Civ. Prac. & Rem. Code §§ 27.001–.011, 51.014(a)(12) (authorizing an interlocutory appeal of an order denying a TCPA motion to dismiss). The narrow focus of this appeal is whether Appellee Lina Ramey met her prima facie burden on the damages element of the defamation claim she alleged against Appellants.[1] Ramey argued that damages are presumed because Appellants signed a letter that was defamatory per se as it imputed to Ramey the crimes of harassment and stalking. We disagree that the letter is defamatory per se, we reverse the trial court's order denying Appellants' motion to dismiss, and we order Ramey's defamation and libel claims dismissed. We remand this matter to the trial court to consider what relief Appellants are entitled to under Civil Practice and Remedies Code Section 27.009. *See id.* § 27.009 (requiring attorney-fee award when legal action is dismissed).

---

[1]Ramey also asserted a third-party claim alleging libel. Unless necessary for clarity, we will use the term defamation to describe the claim. Libel is a species of defamation, and use of the term defamation simplifies the presentation of our analysis.

## II. Factual and Procedural Background

The parties' underlying dispute is between a homeowners' association (the HOA) and Ramey, who is the owner of a home in the development that the HOA governs. The trigger of the dispute was the HOA's claim that Ramey had violated the HOA's restrictive covenants by her plans for and actions in performing construction on her home. Appellants catalog these alleged violations as "among other things, failing to submit an application to the architectural control committee before beginning construction on her property, improperly storing items in community view, and erecting a decorative fence on the property."

When the HOA sued Ramey alleging covenant violations, she responded with counterclaims alleging that the HOA was instead the one in breach of the covenants. Ramey's counterclaims later evolved into an attack on whether the covenants that the HOA sought to enforce had been validly adopted. Resolution of the claims involving enforcement of the covenants is beyond the scope of this appeal.[2]

The issues before us on appeal have their origin in efforts by Ramey and other development residents to replace members of the HOA board. Appellants are HOA officers who were a target of that effort. One aspect of the effort to remove the officers centered on letters that Ramey sent to development residents that—according to her—explained why she had joined "in the call for [ ] meetings and [had] ask[ed]

---

[2]The trial court denied the HOA's summary-judgment motion, and that order is also not the subject of this appeal.

3

the Board to allow the [HOA's] members to hold votes on the removal of the [HOA's] incumbent directors."

Appellants responded to the call for their removal with their own letter (the Letter) that triggered the defamation claim that we review. The Letter, which Appellants signed in their "individual capacities," challenged Ramey's portrayal of the controversy's history and countered Ramey's negative portrayal of the HOA's board's performance.

The Letter was also critical of Ramey's behavior. One of its paragraphs focused on what its authors categorized as Ramey's "questionable personal behavior":

> Mrs. Ramey has engaged in questionable personal behavior designed to harass and intimidate management[-]company employees and HOA Board Members, including:
>
> > o Following, blocking[,] and verbally threatening management[-]company employees. In one case, she followed and harassed the HOA inspector . . . . The second such incident caused the employee to ask to be removed from servicing our neighborhood. These incidents and others are documented by photographic and video evidence and were in most cases witnessed and corroborated by multiple HOA representatives.
> >
> > o The behavior rose to a level where HOA attorneys finally had to send a cease[-]and[-]desist letter to Mrs. Ramey related to her behavior.

In the suit pending between the HOA and Ramey, Ramey filed a third-party claim suing the Letter's authors for having "libeled" her. One aspect of this claim contended that the Letter's categorization of Ramey's "questionable behavior" was defamatory per se because the statement imputed the crimes of harassment and

4

stalking to her. The third-party claim also asserted claims for negligence, which were not mentioned in this appeal.

Appellants responded to Ramey's third-party claim by filing a motion to dismiss that invoked the TCPA and asserted that the Letter was the "'[e]xercise of the right of free speech' [that was] a communication made *in connection with* a matter of public concern." *See id.* § 27.001(3). The motion also anticipated Ramey's response and contended that she could not make a prima facie showing of her defamation per se claim. Ramey's response to the motion highlighted her contention that Appellants' statements accused her of a crime.

The trial court conducted a hearing on the dismissal motion. At the hearing, Ramey acknowledged that Appellants had invoked rights protected by the TCPA. With that concession in place, the hearing focused on whether Ramey had offered prima facie proof of her defamation claim. In this effort, Appellants asserted that Ramey had failed because she offered no proof that the "questionable behavior" statements had damaged her and specifically argued that that the Letter's statements—as understood by a normal person—did not impute criminal conduct to Ramey. To rebut this contention, Ramey reiterated that damages were presumed because the statements' imputation of a crime constituted defamation per se in that the Letter's statements tracked every element of the crime of harassment.

The trial court denied Appellants' efforts to dismiss Ramey's libel and defamation claims.[3] Appellants appealed that denial.

### III. Analysis

### A. We set forth Appellants' issues, which we will sustain.

Appellants raise two issues:

1.  [Do] the statements that a person was "engaging [in] behavior designed to harass," or [does] the use of the word "harass" constitute defamation per se?[4]

2.  Did the trial court err [by] finding that [Ramey had] established a prima facie case of defamation even though [she] conceded that she offered no evidence of damages?

We conclude that the statements in the Letter are not defamatory per se and that without proof of damages, Ramey has failed to carry the prima facie burden necessary to avoid dismissal of her defamation claims.

### B. We set forth the rights protected by the TCPA and our review process for a motion to dismiss filed under that Act.

The TCPA states that its purpose is "to encourage and safeguard the constitutional rights of persons to petition, speak freely, associate freely, and otherwise participate in government to the maximum extent permitted by law and, at the same time, [to] protect the rights of a person to file meritorious lawsuits for

---

[3]The trial court also signed an order dealing with Ramey's written objections to Appellants' evidence. That order is referenced only in Ramey's brief's statement of the case, and the parties do not argue that it has any impact on the issues before us.

[4]The Letter also used the word "harassed." For purposes of our holding, the use of the past tense of the verb has no impact.

demonstrable injury." *Id.* § 27.002. If a legal action is "based on or is in response" to a party's exercise of the rights protected by the TCPA, a party may file a motion to dismiss that action. *Id.* § 27.003(a).

This court has previously described the three-part burden-shifting analysis that must be undertaken once a motion to dismiss is filed:

> The three steps are as follows: (1) the party invoking the TCPA must demonstrate that a "legal action" has been brought against it that is "based on or is in response to" an exercise of the rights of free speech, petition, or association protected by the Act; (2) if the moving party successfully invokes the Act, "[t]he court may not dismiss a legal action under this section if the party bringing the legal action establishes by clear and specific evidence a prima facie case for each essential element of the claim in question[;]" and (3) if the nonmoving party carries its burden, the case may still be dismissed "if the moving party establishes an affirmative defense or other grounds on which the moving party is entitled to judgment as a matter of law." *Id.* § 27.005(b)–(d).

*Miller v. Watkins*, No. 02-20-00165-CV, 2021 WL 924843, at *7 (Tex. App.—Fort Worth Mar. 11, 2021, no pet.); *see Weldon v. Lilith Fund for Reprod. Equity*, No. 24-0250, 2026 WL 1355075, at *2 (Tex. May 15, 2026) (discussing the three-part test used to analyze a TCPA motion to dismiss).

In this appeal, we assume that Ramey's third-party claim was brought in response to Appellants' exercise of rights protected by the TCPA because it involved a matter of public concern. Our focus is on the question of whether Ramey carried her burden under the second step to present clear and specific evidence to establish a prima facie cause of action for defamation against Appellants. We conclude that she failed in this effort.

We have previously described the salient governing principles that "define the prima facie burden a party responding to a TCPA motion to dismiss bears, [that] define the words used in the statute, and [that] explain the [Act's] concepts of proof" as follows:

- To present "clear and specific" evidence, the nonmovant "must provide enough detail to show the factual basis for its claim" and must provide enough evidence "to support a rational inference that the allegation of fact is true." *Dall. Morning News, Inc. v. Hall*, 579 S.W.3d 370, 377 (Tex. 2019).

- The words "clear and specific" are defined to mean, for the former, "'unambiguous,' 'sure,' or 'free from doubt'" and, for the latter, "'explicit' or 'relating to a particular named thing.'" *In re Lipsky*, 460 S.W.3d 579, 590 (Tex. 2015) (orig. proceeding).

- "The [party responding to a TCPA motion to dismiss] may rely on circumstantial evidence—indirect evidence that creates an inference to establish a central fact—unless 'the connection between the fact and the inference is too weak to be of help in deciding the case.'" *Dall. Morning News*, 579 S.W.3d at 377 (quoting *Lipsky*, 460 S.W.3d at 589).

- Statements that are conclusory or evidence that is speculative is not sufficient to carry the nonmovant's burden. *Mogged v. Lindamood*, No. 02-18-00126-CV, 2020 WL 7074390, at *9 (Tex. App.—Fort Worth Dec. 3, 2020, pet. denied) (en banc mem. op. on reh'g).

*Johnson v. Windsong Ranch Cmty., Ass'n, Inc.*, No. 02-23-00385-CV, 2024 WL 725523, at *4 (Tex. App.—Fort Worth Feb. 22, 2024, no pet.). Most importantly to our disposition, the nonmovant surmounts its burden of establishing a prima facie case when the evidence presented is "sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Lipsky*, 460 S.W.3d at 590. Stated differently,

8

the burden is met by "the 'minimum quantum of evidence necessary to support a rational inference that the allegation of fact is true.'" *Id.* (quoting *In re E.I. DuPont de Nemours & Co.*, 136 S.W.3d 218, 223 (Tex. 2004) (orig. proceeding)).

We subject the trial court's ruling on a TCPA motion to dismiss to de novo review. *NexPoint Advisors, L.P. v. United Dev. Funding IV*, 674 S.W.3d 437, 444 (Tex. App.—Fort Worth 2023, pets. denied). In our review, we consider—in the light most favorable to the nonmovant—the pleadings and any evidence that a court could consider on summary judgment. Tex. Civ. Prac. & Rem. Code § 27.006(a); *S&S Emergency Training Sols., Inc. v. Elliott*, 564 S.W.3d 843, 847 (Tex. 2018).

**C.**     **We set forth the elements of a defamation claim and our review of such a claim in the context of a TCPA motion to dismiss.**

The libel cause of action that Ramey alleged is a statutorily defined species of defamation. Tex. Civ. Prac. & Rem. Code § 73.001 (defining "libel" as "defamation expressed in written . . . form that tends . . . to injure a living person's reputation and thereby expose the person to public hatred, contempt or ridicule, or financial injury or to impeach any person's honesty, integrity, virtue, or reputation . . . and thereby expose the person to public hatred, ridicule, or financial injury").

Generally, the elements of defamation that a plaintiff must show are as follows:

> (1) the publication of a false statement of fact to a third party[;] (2) that was defamatory concerning the plaintiff[;] (3) with the requisite degree of fault, at least amounting to negligence[;] and (4) damages, in some cases. A defamatory statement is one that "tends [ ] to harm the reputation of another as to lower him in the estimation of the community or to deter third persons from associating or dealing with him."

9

*Innovative Block of S. Tex., Ltd. v. Valley Builders Supply, Inc.*, 603 S.W.3d 409, 417 (Tex. 2020) (citations omitted).

As a general proposition, a party responding to a TCPA dismissal motion makes a prima facie showing of the defamation elements when the party's pleadings and evidence establish "the facts of when, where, and what was said[;] the defamatory nature of the statements[;] and how they damaged the plaintiff." *Lipsky*, 460 S.W.3d at 591.

Again, the narrow focus of the parties' argument limits our analysis to the question of whether Ramey carried her prima facie burden on the damages element, but that issue arises in the unique setting of a defamation claim that turns on whether the alleged defamatory statements are of a type for which damages are presumed. Whether that presumption is triggered depends on whether the defamation is per se or per quod. The two types of defamation and how each category affects the need to prove damages is as follows:

> Texas recognizes the common-law rule that defamation is either per se or per quod. [*Dall. Morning News, Inc. v.*] *Tatum*, 554 S.W.3d [614,] 624 [(Tex. 2018)] (citing . . . *Lipsky*, 460 S.W.3d at 596). Defamation per se refers to statements that are so obviously harmful to a person's reputation that a jury may presume general damages, such as damages for loss of reputation or for mental anguish. *Hancock v. Variyam*, 400 S.W.3d 59, 63–64 & n.4 (Tex. 2013) (noting that actual or compensatory damages include both general damages, which are noneconomic in nature, and special damages, which are economic, such as damages for lost income). Statements that injure a person in his [or her] office, profession, or occupation are typically classified as defamatory per se, *id.* at 64, 66, as are statements accusing someone of a crime, . . . *Lipsky*, 460 S.W.3d at 596. Defamation per quod is simply defamation that is not

10

actionable per se. *Id.* Whether a statement qualifies as defamation per se is generally a question of law. *Id.*

*Thibodeaux v. Starx Inv. Holdings, Inc.*, No. 03-20-00613-CV, 2021 WL 4927417, at \*9 (Tex. App.—Austin Oct. 22, 2021, pet. dism'd). In the context of a claim for defamation per se, a party need not offer proof of actual damages to establish a prima facie case under step two of the review process for a TCPA dismissal motion because "[p]leading and proof of particular damage is not required to prevail on a claim of defamation per se, and thus actual damage is not an essential element of the claim to which the TCPA's burden of clear and specific evidence might apply." *Lipsky*, 460 S.W.3d at 596 (holding that while the plaintiff's affidavit on damages may have been insufficient to substantiate its claim to special damages, it was not needed to defeat the defendant's dismissal motion because the plaintiff's defamation claim was actionable per se).

**D.    We set forth the standard to determine whether a statement imputes criminal behavior.**

Here, our operative question is whether the Letter's statements regarding Ramey's questionable personal behavior imputed that she had committed a crime. The most comprehensive holding on what guides that analysis comes from the Corpus Christi–Edinburg Court of Appeals:

> If a statement unambiguously and falsely imputes criminal conduct to the plaintiff, it is defamatory *per se*. *Ramos v. Henry C. Beck Co.*, 711 S.W.2d 331, 334 (Tex. App.—Dallas 1986, no writ) (publication of a third-party report of theft, as opposed to a direct accusation of theft, may be defamatory *per se*). It is not necessary that the publication of a

11

charge of violating a criminal statute be made in a technical manner the same as might be required of an indictment. It is sufficient on reading the article that an ordinary person would draw a reasonable conclusion that the complaining party was charged with a violation of some criminal law. *Hornby v. Hunter*, 385 S.W.2d 473, 475 (Tex. . . . App.—Corpus Christi[–Edinburg] 1964, no writ); *Easley v. Express [Publ'g] Co.*, 299 S.W.2d 782[, 784] (Tex. . . . App.—San Antonio 1957, writ ref'd n.r.e.). In other words, it is sufficient if the charge is made by reasonable implication or insinuation, or if it consists of a statement of facts [that] naturally and presumably would be understood as a charge of crime by those who hear it, or if the language was calculated to induce those who heard it to understand that the person to whom it relates is guilty of a crime. *Elder v. Evatt*, 154 S.W.2d 684, 685 (Tex. . . . App.—Eastland 1941, no writ) (quoting 27 Tex. Jur. *Libel and Slander* § 6 (1933)).

*Mitre v. Brooks Fashion Stores, Inc.*, 840 S.W.2d 612, 619–20 (Tex. App.—Corpus Christi–Edinburg 1992, writ denied), *abrogated on other grounds by Cain v. Hearst Corp.*, 878 S.W.2d 577, 578–79 (Tex. 1994). A later case from that same court carries forward this principle in slightly different words:

> If a statement unambiguously and falsely imputes criminal conduct to plaintiff, it is defamatory *per se*. *Mitre* . . . , 840 S.W.2d [at] 619 . . . . However, the charge of violating a criminal statute need not be made in a technical manner. It is sufficient to constitute slander *per se* if, in hearing the statement, an ordinary person would draw a reasonable conclusion that the complaining party was charged with a violation of some criminal law. *Id.* at 620.

*Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex. App.—Corpus Christi–Edinburg 1997, writ denied).

The quoted principle aligns with the Restatement's guidance for determining whether there is an imputation of a crime:

> *Imputation, how made.* It is not necessary that the charge be made in technical language. It is enough that the language used imputes to the

12

other the criminal offense.  On the other hand, it is not enough merely to suggest that another is capable of committing a crime or that he [or she] would commit it if sufficient opportunity were presented.  Neither is it sufficient to charge another with a criminal intention or design, if no criminal act is charged.

Restatement (Second) of Torts § 571, cmt. c (Sept. 2025 update).[5]

<hr>

[5]We will focus on whether the Letter accuses Ramey of the crime of harassment though she also claims that it accuses her of the crime of stalking.  The Letter does not use the word stalking.  In an attempt to bring herself within the terms of the Penal Code's definition of stalking, Ramey rewrites the statute.  Through rewording the introductory phrase of the Penal Code section at issue, she describes the offense of stalking as

> knowingly engaging in conduct that constitutes a violation of [S]ection 42.07 [for harassment] that is directed at a specific person and that causes the other person, and would cause a reasonable person in the same or similar circumstances, to feel harassed, terrified, intimidated, annoyed, alarmed, abused, tormented, embarrassed, or offended."

By her editing, she writes out the element of the offense of stalking that requires conduct directed at a specific person on more than one occasion as follows:  "A person commits an offense if the person, *on more than one occasion and pursuant to the same scheme or course of conduct that is directed at a specific other person*, knowingly engages in conduct . . . ."  Tex. Penal Code § 42.072(a) (emphasis added).  Though Ramey's brief claims that the Letter accuses her of "multiple" and "repeated" acts, she does not contend that the Letter accused her of repeated conduct directed at the same person as required by the Penal Code.  Her brief's characterization of the conduct mirrors the description that she gave it in the trial court where she stated in her response to Appellants' motion to dismiss that "[t]he specific statements in the . . . Letter, taken as a whole, falsely accuse Ramey of engaging in specific conduct, on multiple occasions, against specific *persons* affiliated with the HOA." [Emphasis added.]  Moreover, we hold herein that the Letter did not accuse Ramey of the crime of harassment, and thus her argument in her brief that the Letter likewise accuses her of the crime of stalking also fails.

**E.    We set forth the two questions that we pose to decide whether the Letter imputed the crime of harassment to Ramey.**

We will examine the question of whether the Letter imputes the crime of harassment to Ramey through two lenses. First, does the Letter accuse Ramey of conduct that meets the elements of the criminal offense of harassment as defined by the Texas Penal Code? Second, does the Letter unambiguously impute criminal conduct because an ordinary person "naturally and presumably would [understand the Letter] as a charge of crime" because the Letter uses the word harass? *Mitre*, 840 S.W.2d at 620. We answer both questions no.

**F.    We conclude that the Letter did not allege conduct that constitutes harassment under the Penal Code's definition of that offense.**

Turning to the first question, Ramey contends that the Letter "unambiguously accuse[s her] of clear, specific, intentional, repeated, and verifiable acts that the Texas Penal Code defines as criminal harassment, stalking, or both." According to Ramey, the Texas Penal Code defines harassment "as conduct committed with the intent to harass, annoy, alarm, abuse, torment, or embarrass another [person]." The issue that Ramey's brief sidesteps is that the Penal Code's definition of harassment requires more than just annoying conduct. The subsection defining the offense of harassment has an introductory phrase that provides that "[a] person commits an offense if, with intent to harass, annoy, alarm, abuse, torment, or embarrass another, the person [commits specifically described acts]." Tex. Penal Code § 42.07(a). In other words, the subordinating conjunction "if" within the quoted phrase signals that the acts of

14

harassment or annoyance must take a particular form, and the statute specifies those forms under Subsection (a).

Ramey only tells us which subsection she has been accused of violating by a passing footnote reference in her brief. She invokes Subsection (a)(9)(B) of the Penal Code's definition of harassment, which though she does not quote it, provides that an offense occurs when a person acts with the requisite intent to harass or annoy *and* "tracks or monitors the personal property or motor vehicle of another person, without the other person's effective consent, including by . . . physically following the other person." *Id.* § 42.07(a)(9)(B).

Ramey apparently claims that the Letter alleges an offense under Subsection (a)(9)(B) because it states that she was "[f]ollowing, blocking[,] and verbally threatening management[-]company employees." The passing footnote reference does not explain how the Letter's language suggests that Ramey was "track[ing] or monitor[ing] the personal property or motor vehicle of another person." *See id.* In essence, her contention requires the conclusion that anytime a person follows another to harass or annoy them, the person must be monitoring or tracking such that the conduct translates into the conduct addressed by Subsection (a)(9)(B). That paints with too broad a brush for us to conclude that the Letter accused Ramey of conduct that meets the Penal Code element that she references.

Ramey specifically argues that "[t]he specific and verifiable acts explicitly described in the . . . Letter, however, have everything in common with the conduct

15

criminalized in [S]ections 42.07 [harassment] and 42.072 [stalking] of the Texas Penal Code, including the acts themselves, the intent, and the effect on the victim." If by this she means that the Letter specifically outlined conduct that met the element of the crimes that she references, we disagree. And Ramey is not consistent in her contentions because she later describes the specific acts that she has been accused of in the Letter as "reprehensible *non*-criminal acts." [Emphasis added.] Thus, we answer the first question in the negative because the Letter does not allege specific conduct that would be a criminal offense as defined by Penal Code Section 42.07(a)(9)(B).

### G. We conclude that the Letter's use of the word harassed does not unambiguously impute criminal conduct to Ramey.

Now we turn to the second question, which goes beyond whether the Letter described specific conduct that constitutes a crime and extends to the question of whether the terminology used in the Letter—the term harassed—imputes criminal conduct. Again, our task is not to decide whether the Letter is defamatory but whether its terms imputed a crime that makes it defamatory per se and freed Ramey of the prima facie burden of offering proof of damages.

Ramey argues that the Letter is defamatory per se on its face—or at least raises a fact question as to its meaning—by virtue of the conduct that it describes in conjunction with its use of the word harassed:

> In making [the] determinations [whether a reasonable person would
> conclude the letter is defamatory per se], Texas courts focus not only

16

"on a statement's verifiability" but also on "the entire context in which it was made." Even so, the other verifiably false and defamatory statements in the . . . Letter, which accuse Ramey of specific reprehensible non-criminal acts, put Appellants['] use of the word harass[ed], which unambiguously but falsely accuse Ramey of engaging in repeated, specific, and verifiable criminal acts of harassment and intimidation, in context.

> In this context, . . . Appellants' words preclude a reasonable person from perceiving . . . Appellants['] accusations that Ramey engaged in repeated and specific acts of verbal and physical harassment and intimidation as anything that engaging in such criminal conduct is entirely consistent, and not necessarily more extreme than their accusations that she engaged in disreputable but non-criminal conduct.

Ramey makes this argument to counter Appellants' argument that the word "harass" does not unambiguously impute criminal conduct because it carries non-criminal connotations:

> The word "harass" does not, by itself without extrinsic evidence or innuendo connotate a crime simply because it shares a root word with a crime in the Texas Penal Code. When a word has a colloquial meaning that does not impute criminal behavior, it becomes necessary for a plaintiff to present evidence that the receiver of the statement understood the statement to be imputing a criminal act, thus requiring extrinsic evidence and rendering the statement not defamation per se[] but defamation per quod.

Appellants' argument continues that without a criminal connotation of the word harassed being apparent in the context of the Letter, that connotation could only come from extrinsic evidence in the form of proof of the elements of the crime of harassment as defined by the Penal Code.

17

In essence, we must decide whether the use of the word harassed carries the sting of an accusation of a crime and whether a court or a jury should decide that question. The answer is not a straightforward one.

In the context of whether statements are defamatory per se by imputing a crime, the Texas Supreme Court instructs us to follow the usual standard of looking through the lens of an ordinary reader but then appends the possibility that a jury may have a role in deciding the statement's import:

> As an initial matter, the parties note [that] we have yet to decide whether the determination of a statement as defamatory *per se* is a question for the court or the trier of fact. The court must first determine whether a statement is reasonably capable of a defamatory meaning from the perspective of an ordinary reader in light of the surrounding circumstances. *Musser v. Smith Protective Servs., Inc.*, 723 S.W.2d 653, 655 (Tex. 1987). If the statement is not reasonably capable of a defamatory meaning, the statement is not defamatory as a matter of law and the claim fails. *Id.* **Likewise, the determination of whether a statement is defamatory *per se* is first an inquiry for the court. If the court determines that an ordinary reader could only view the statement as defamatory and further concludes that the statement is defamatory *per se*, it should so instruct the jury and have the jury determine damages. If the court determines that a statement is ambiguous or of doubtful import, the jury should determine the statement's meaning.** *Id.*

*Hancock*, 400 S.W.3d at 66 (emphasis added in bold).

The Restatement provides more precise guidance on which questions are legal and which are factual—both generally on the issue of defamation and in the context of defamation per se. The breakdown is described generally in the following comment:

18

In the determination of whether a given communication is defamatory, three questions may arise: first, whether the communication was reasonably capable of conveying the particular meaning, or innuendo, ascribed to it by the plaintiff; second, whether that meaning is defamatory in character; and third, whether the meaning in question was in fact conveyed to and understood by the recipient of the communication.

Under the rule stated in this [s]ection, the determination of the first two of these questions is for the court and that of the third for the jury. The court determines whether the communication is capable of bearing the meaning ascribed to it by the plaintiff and whether the meaning so ascribed is defamatory in character. If the court decides against the plaintiff upon either of these questions, there is no further question for the jury to determine[,] and the case is ended. If, on the other hand, the judge decides that the communication is capable of bearing the meaning in question and that [the] meaning is defamatory, there is then the further question for the jury, whether the communication was in fact understood by its recipient in the defamatory sense.

Restatement (Second) of Torts § 614, cmt. b (Sept. 2025 update) (citations omitted).

In turn, the Restatement assigns the duties with respect to the question of whether a statement is defamatory per se as follows:

[I]t is for the judge to determine whether spoken words that are clearly defamatory or that are or may properly be found by the jury to have been understood in a defamatory sense are actionable without proof of special harm. Thus, if the language used by the defamer clearly imputes to the other a criminal offense, the judge determines whether the criminal offense is one that satisfies the requirements of § 571, Clauses (a) and (b)[ specifying what are "Slanderous Imputations of Criminal Conduct"].

Restatement (Second) of Torts § 615, cmt. a (Sept. 2025 update); *see also Scripps NP Operating, LLC v. Carter*, 567 S.W.3d 1, 17 (Tex. App.—Corpus Christi–Edinburg 2016) ("Likewise, the determination of whether a statement is defamatory per se is

19

first an inquiry for the court."), *aff'd*, 573 S.W.3d 781 (Tex. 2019). The Restatement clarifies the division of labor between the court and the jury, which was summarized in *Hancock*, by observing that the court decides as a legal question whether the words used are defamatory per se.

To perform the court's role in deciding whether a statement is defamatory per se, our court has concluded that a statement is not defamatory per se if innuendo must be used to determine the import of the statement:

> Whether language is capable of having a defamatory meaning is a question of law for the trial court. *Musser* . . . , 723 S.W.2d [at] 655 . . . . In determining this question, the court construes the statement as a whole in light of surrounding circumstances based upon how a person of ordinary intelligence would perceive the entire statement. *Id.* at 654–55. If the statement, seen in this light, has but one clear and obvious meaning, then no further inquiry is necessary. *Gray* . . . , 941 S.W.2d [at] 329 . . . ("If a statement unambiguously and falsely imputes criminal conduct to plaintiff, it is defamatory per se."). However, if the statement is ambiguous, or if the full effect of the statement cannot be understood without the use of extrinsic evidence, then the trial court must go beyond the snapshot of time in which the statement was published and consider innuendo. *Moore v. Waldrop*, 166 S.W.3d 380, 386 (Tex. App.—Waco 2005, no pet.). [Footnote six of our opinion then states, "Innuendo is the use of extrinsic evidence to prove a statement's defamatory nature. *Id.* at 385. It includes the aid of inducements, colloquialisms, and explanatory circumstances. *Id.*] An innuendo may be used to explain but not to extend the effect and meaning of the language asserted to be actionable. *Simmons v. Ware*, 920 S.W.2d 438, 451 (Tex. App.—Amarillo 1996, no writ). In some cases, the consideration of innuendo and extrinsic evidence is the only way to know whether a statement is slanderous. *Moore*, 166 S.W.3d at 386.
>
> The test for actionable innuendo is not what construction a plaintiff might place upon the statements, but rather, how the statement would be construed by the average reasonable person or the general public. *Simmons*, 920 S.W.2d at 451; *Arant v. Jaffe*, 436 S.W.2d 169, 176

20

(Tex. . . . App.—Dallas 1968, no writ). Again, it is the court's duty to determine if the statements at issue are, in their natural meaning, capable of the defamatory interpretation ascribed to them by the innuendo. *Simmons*, 920 S.W.2d at 451. However, as explained by the Waco Court of Appeals, "once innuendo is being considered, the statement has moved beyond the analysis of slander *per se* and into that of slander *per quod*, because . . . [t]he very definition of 'per se,' 'in and of itself,' precludes the use of innuendo. If the statement, taken by itself and as a whole, is per se slanderous, it will require no extrinsic evidence to clarify its meaning." *Moore*, 166 S.W.3d at 386.

*Bingham v. Sw. Bell Yellow Pages, Inc.*, No. 2-06-229-CV, 2008 WL 163551, at *3 (Tex. App.—Fort Worth Jan. 17, 2008, no pet.) (on reh'g); *see also Levine v. Steve Scharn Custom Homes, Inc.*, 448 S.W.3d 637, 650 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) ("In contrast, a statement is defamatory per quod if the defamatory nature of the statement must be established by proof of innuendo or other extrinsic evidence." (citing *Main v. Royall*, 348 S.W.3d 381, 390 (Tex. App.—Dallas 2011, no pet.))).[6]

Applying the analytical path that we have mapped, we conclude that it is the court's job to decide whether the conduct ascribed to Ramey in the four corners of

---

[6]*Bingham* speaks to slander per se, but the rule it states also applies in the context of libel per se as the Fourteenth Court of Appeals has held that

[a] written defamatory statement is libel per se if the words in and of themselves are so obviously hurtful to the person aggrieved by them that they require no proof of injury. *Scripps NP Operating . . .* , 567 S.W.3d [at] 1 . . . . These include statements that (1) unambiguously charge a crime, dishonesty, fraud, rascality, or general depravity, or (2) are falsehoods that injure one in his office, business, profession, or occupation. *Id.* If the court must resort to innuendo or extrinsic evidence to determine that the statement was defamatory, then it is libel per quod and requires proof of injury and damages. *Id.*

*Amell v. Van Pelt*, 729 S.W.3d 70, 86–87 (Tex. App.—Houston [14th Dist.] 2025, no pet.).

the Letter in conjunction with the categorization of that conduct as harassment is a clear or unambiguous imputation of a crime. We limit our analysis to the four corners of the Letter because Ramey does not claim that there are explanatory circumstances outside the bounds of the Letter that impact the meaning of its statements.

Certainly, there are words that carry the imputation of an allegation of criminal conduct in and of themselves. As explained by the Fifth Circuit, there is a difference under Texas law between calling someone a "thief" or a "crook":

> Texas case law firmly establishes that falsely accusing someone of stealing or calling someone a "thief" constitutes defamation per se. *See, e.g., Bennett v. Computer Assocs. Int'l, Inc.*, 932 S.W.2d 197, 200 (Tex. App.—Amarillo 1996, writ denied) ("One who falsely imputes to another the crime of theft commits slander *per se.*" . . . Falsely calling someone a 'crook' or 'thief' or falsely accusing him of stealing property falls within the parameters of slander *per se . . . .*"); *see also Glenn v. Gidel*, 496 S.W.2d 692, 697–98 (Tex. . . . App.—Amarillo 1973, no writ); *Anderson v. Alcus*, 42 S.W.2d 294, 296 (Tex. . . . App.—Beaumont 1931, no writ). In contrast, as recognized in *Moore*, Texas courts have determined that the term "crook" does not inherently have the same defamatory content. *See, e.g.,* . . . 166 S.W.3d at 384; *Billington*[ *v. Hous. Fire Cas. Ins. Co.*], 226 S.W.2d [494,] 496[ (Tex. App.—Fort Worth 1950, no writ)]; *Arant* . . . , 436 S.W.2d [at] 177–78 . . . . But when the word "crook" is used in a context imputing theft, it is also defamatory per se. *See Bennett*, 932 S.W.2d at 200 (holding that "[f]alsely calling someone a 'crook'" was defamatory per se where the defendant called the plaintiff "a 'thief' and a 'crook' who had stolen . . . computer software").

*Fiber Sys. Int'l, Inc. v. Roehrs*, 470 F.3d 1150, 1162 (5th Cir. 2006).

Thus, *Fiber Systems* indicates that our next step in the analysis is to decide whether the word harassed connotes criminal conduct with the same force as a word

such as thief.  We conclude that the word harassed does not unambiguously impute criminal conduct.

As Appellants note, the root word harass carries a meaning that imputes noncriminal conduct:

> According to Merriam-Webster, the definition of harass is to "exhaust or fatigue" or "to annoy persistently."  *Harass*, Merriam-Webster, https://www.merriam-webster.com/dictionary/harass . . . .  Neither of these behaviors would rise to the level of a criminal offense nor would a person hearing the word harass, understanding these to be the everyday meaning of the word, understand the statement to be imputing criminal conduct on the part of Appellee.

Further, we have not found a Texas case that deals with the implication of the use of the word harass, but we have found out-of-state authority that does.  For example, an Illinois appellate court recently resolved the question as follows:

> [Appellant] argues that, by characterizing his communications as "bullying, threats, intimidation[,] and harassment," [appellee] sought to use Packet 1 to accuse [appellant] of several specific crimes, such as[] (1) harassment through electronic communications; (2) stalking; and (3) intimidation.  Again, we disagree.  [Appellant's] argument focuses on certain words from the packet's two letters, while ignoring the substance of the Kenneally letter, which, again, repeatedly and unequivocally requests the state's attorney to investigate *whether* any crimes were committed.  Further, while the packet does include the words "stalk" and "harass" at times when describing [appellant's] actions, it is clear from the context of the packet that the terms are used in their general, everyday sense to accurately describe [appellant's] actions, not to specifically identify certain criminal offenses that [appellant] had committed.

*Younge v. Berman*, 267 N.E.3d 346, 360 (Ill. App. Ct. 2025) (citations omitted).

And a Connecticut court has held that

per se defamation does not require explicit reference to a felony-level crime, either by statutory designation or reference to specific aggravating factors making the conduct felonious, but there must be a reasonableness to a claimed inference that the plaintiff was being accused (in a factual sense) of an infamous crime, a felony. Using the plaintiff's own words, a claim that he had "displayed threatening and harassing behavior toward staff members of the Pequot Library . . ." and that his "social media posts 'are stalking and harassing of Library staff,'" do not give rise to a reasonable interpretation/inference that the plaintiff had been accused of an infamous crime, particularly when being provided to a trained police officer, in response to an inquiry from the officer as to the context for a current complaint.

*Berry v. Fried*, No. FBTCV205043441S, 2024 WL 4274262, at *13 (Conn. Super. Ct. Sep. 17, 2024) (brackets omitted). Harkening back to the thief–crook dichotomy and performing our role to make the decision regarding whether the word carries the unambiguous imputation of criminal conduct, we conclude that the word harassed simply does not carry the sting of a word that unambiguously imputes criminal conduct.

At the end of this lengthy process, we conclude that the following principles guide our analysis:

- It is a legal question to decide the import of the words used in the Letter, and here there are no surrounding circumstances that impact the analysis and might create a fact question.

- The Letter does not allege conduct that constitutes harassment as defined by the Penal Code.

- The word harassed does not unambiguously impute criminal conduct, and without that unambiguous reference, how a reader of ordinary intelligence would know the import of the word is potentially a crime would have to come from an outside source, which removes the statement from the category of being per se defamatory.

24

As we have explained above, a prima facie case exists for purposes of the TCPA when the evidence presented is "sufficient as a matter of law to establish a given fact if it is not rebutted or contradicted." *Lipsky*, 460 S.W.3d at 590. Here, the statements in the Letter are not defamatory per se. Thus, Ramey was not freed from the burden of offering prima facie evidence of damages to meet her prima facie burden on her claim of defamation.

Accordingly, we sustain Appellants' two issues.

## IV. Conclusion

Having sustained Appellants' two issues, we reverse the trial court's denial of Appellants' motion to dismiss and hold that the statements in the Letter are not defamatory per se and that Ramey, without proof of actual damages, has failed to present prima facie proof of her defamation and libel claims.[7] We order that her claim pleaded as libel against Appellants be dismissed. We remand this matter to the trial court to consider what relief Appellants are entitled to under Civil Practice and Remedies Code Section 27.009. *See* Tex. Civ. Prac. & Rem. Code § 27.009.

/s/ Dabney Bassel

Dabney Bassel
Justice

Delivered: June 11, 2026

---

[7]The trial court's order denying the dismissal motion referred to "defamation" and "libel" causes of action.

25